IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUETTS

---

KEVIN TAYLOR,

        Plaintiff,

    v.

HARLEY LAPPEN, DIRECTOR
FEDERAL BUREAU OF PRISONS, et al.,

        Defendants.

---

C.A. No. 04-40163-PSB

## MOTION FOR DECLARATORY RELIEF
## PURSUANT TO 28 U.S.C. §§ 1331 AND 2201

COMES NOW, the Plaintiff, KEVIN TAYLOR (hereinafter referred to as "Taylor" or "Plaintiff") by and through Pro se, and hereby respectfully moves this Honorable Court for Declaratory Judgment pursuant to Title 28, United States Codes, Sections 1331 and 2201. In support of such relief, the Plaintiff respectfully submits the following:

## I. Pertinent Historical Facts

1. On March 26, 2004, the Plaintiff Mr. Taylor was ordered to bring his property to the Receiving and Departure ("R & D") Department of the Federal Correctional Facility of Fort Dix, New Jersey where he was told to pack his property for transfer.

2. On or about March 31, 2004, after Plaintiff packed his property he was transferred to Federal Medical Center, Fort Devens, and placed for housing in N-Building which is designated

as the psychological department for mental illness inmates.

3. In about May, 2004, the psychology department of Fort Devens requested an interview with Plaintiff where he was informed by Psychologist Doctor Ranaud, Case Worker Ms. Bisci and Intern Ms. Matthews that he was brought to Devens for psychological treatment as a sex offender. The Plaintiff was further told that this program was mandatory and pernament until his release. Moreover, Doctor Renaud informed him that he must participate in psychiatric treatment both mental and physical which if he refuse to participate in this program he will lose his Community Correctional Center ("CCC") halfway house placement. He was also informed that he would be registered as a sex offender upon his release.

4. Mr. Taylor filed an inmate request form (commonly called inmate cop out form) to Psychologist Doctor Renaud, his Unit Team Members (Unit Manager Hernandez, Case Manager Hufnagle and Counselor Nelson ) and Warden Winn to inquire about this Program's Policy Statement number or whether the program was authorize by the Code of Federal Regulation of Title 28, but no information was provided to Plaintiff concerning the program (" Sex Offender Mandatory Program").

5. Mr. Taylor then complained to Warden Winn, Unit Manager Hernandez, Case Manager Hufnagle, and Counselor Nelson to transfer him back to Fort Dix Federal Correctional Institution, that he did not want to participate in this program, nor receive psychological treatment for crimes committed over twenty-five (25) and thirty (30) years ago which he was already punished and treated. Mr.

2.

Taylor's final complaint was that he was sentenced for a drug
trafficking, which he cannot be treated nor punished for sex
offense.

6. Again, the defendants (Warden Winn, Psychologists Renaud,
Becotte, Mayo, and Social Worker Bisci, and Unit Team Membners)
ignored his complains.

7. Consequently, Mr. Taylor filed for administrative
remedy which he complained to being transferred to Devens for
psychological treatment in a mandatory program for sex offenders,
which violated his constitutional rights to due process, to be
free from cruel and unusual punishment, and ex post facto.

8. Between April to June 2004, the Plaintiff's
administrative remedy were reviewed by the defendants (Warden Winn,
Director of Northeast Region Office Mr. D. Dodrill) and denied.
The administrative remedy filed to Director of the Federal Bureau
of Prisons, Mr. Lappen was never answer(ed).

9. On or about August, 2004, Mr. Taylor filed a civil
action complaint against Defendants (Case Manager J. Strickland,
Unknown Unit  Manager and C.J. DeRosa, Warden all of Fort Dix
Federal Correctional Institution, D. Dodrill, Northeast Regional
Director of the Bureau of Prisons ("BOP"), Fort Devens
Psychologists C. Becotte, C. Mayo, Renaud, and Social Worker Bisci,
and Warden D. Winn, and Unit Team Unit Manager Hernandez, Case
Manager Hufnagle, and Counselor Nelson, and Lappen, Director of
Federal Bureau of Prisons) under 28 U.S.C. §§ 1331 and 1346.
Specifically, the Plaintiff contended that the defendants violated
his Constitutional Rights under the Fifth and Eighth Amendments

3.

and Ex Post Facto of Section 9 of Article 1.

10. On or about April, 2005, the Plaintiff filed an amended complaint to his civil action at No. 04-40163-PSB. Subsequently, this honorable court granted the motion to amend the complaint and the affidavit to proceed in forma pauperis. The Court also provided the Plaintiff an order the directed the defendants to answer the complaint within  60 days of being serve the summons.

11. The Plaintiff served upon the United States Marshals the amended complaint, the summons, the notice and forma pauperis notice, which the Marshals served all the defendants excepts two (i.e., the Unit Manager Unknown to Plaintiff and the general counselor for the Northeast Regional Director Dodrill declined to except the complaint) on June, 2005.

12. The Plaintiff served defendant Dodrill the complaint by waiver form on October, 2005.

13. Currently, more than 60 days has expired since the defendants were served by the Marshals with the complaint, which none of the defendants has filed an answer opposing the claims alleged therein.

4.

for which a federal prisoners is currently serving a sentence.
Id. Further, that the defendants are hereby restrained and
enjoined from applying the provisions of 18 U.S.C. § 4042(c) to
the Plaintiff, or notify state law officials of his release.

**B. The Defendant's Transfer of Plaintiff to Mental Facility for Psychological Treatment as a Sex Offender violated Plaintiff's Right under Due Process.**

The Defendant's imposition of a mandatory sex offender
program and therapy as a result of the Plaintiff's prior
conviction, without providing him notice nor an opportunity to
contest his sex offender status, violates his right to due process.
Coleman v. Dretke, 395 F.3d 216 (5th Cir. 2004); Doe v. Dep't of
Safety ex rel. Lee, 271 F.3d 38, 62 (2nd Cir. 2001)(finding that
the Connecticut sexual predator statute violative of due process
clause because the statute did not provide a hearing to determine
whether an individual was currently dangerous before he was
classified as a sex offender).

The Courts procedent dictates that Plaintiff's right to
procedural due process depends on a two step inquiry. The
reviewing court must first determine whether Petitioner had a
liberty interest in not having a sex offender program as part of
his sentence and, if so whether the defendants provided
constitutionally sufficient procedures before imposing such
condition. See Coleman, supra (citing, Kentucky Dep't of Corr.
v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506
(1989)

8.

First and foremost, the Supreme Court recognized that a liberty interest may arise from  two sources- the Due Process Clause itself or State, or federal law. Sandin v. Conner, 515 U.S. 472, 477-84, 115 S.Ct. 2293, 32 L.Ed.2d 418 (1995)

The Court, however, noted that a law does not implicate due process unless it bears on a prisoner's life, liberty, or property interest. Am Mfrs. Mutual Ins. Co. v. Sullivan, 426 U.S. 40, 60, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); Neitzke v. Williams, 490 U.S. 319, 21-22, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)

With these principle of law as a backdrop, the Plaintiff's due process right was violated when the defendants classified Plaintiff as a sex offender and impositioned a mandatory sex offender program all without providing him notice nor an opportunity to be heard in which to contest his sex offender classification, or the validity of the program.

For instance, the defendants failed to provide Plaintiff with notice or hearing before it used a 30 year old conviction to assign him a sex offender classification and consequently treated him in a sex offender therapy program.

The defendants never provided him any opportunity to contest such treatment, nor oppose this program based on the BOP's failure to file notice and comment of such program prior to its implementation. See Administrative Procedures Act of Title 5 U.S.C. §553 et seq.  In fact, the defendants transferred Plaintiff to FMC-Devens, impositioned the program and restrained him by classifying him as a sex offender, then placed him a sex

9.

offender Unit  and program and denied him Community Correction
Center ("CCC")- halfway house as a result of his failure to
participate in such program.

The Plaintiff has a liberty interest invested in the
Constitution because he had a right to be afforded a "notice and
an opportunity be heard" prior to be assigned sex offender status,
based on his prior conviction. Simmon, supra, or placed in a
sex offender program, Coleman, supra.

The Plaintiff also had a liberty interest invested in
statute [18 U.S.C. § 3624(c)] which requires all federal prisoners
spend time in CCC. See Goldings v. Winn, 383 F.3d 17 (1st Cir.
2004)(by its plain  language, § 3624(c) provides thtat the BOP
"shall take step" to "assure" that prisoners serve a reasonable
part of the last ten percent of their prison terms "under
conditions that afford the prisoner a reasonable opportunity
to adjust to and prepare for the prisoner's reentry into the
community.")

As stated in Goldings, this language imposes an affirmative
obligation on the BOP to take steps to facilitate a smooth
re-entry for prisoners into the outside world unless
impractical.

Nonetheless, the defendants rescinded Plaintiff's CCC as a
result of his failure to participate in SOMP which was an affect
on his life or liberty since he had an expectation of early
release (CCC placement), which is a less restrictive confinement,
which otherwise Plaintiff will suffer more hardship, atypical to
other inmates given such release.

10.

Resultantly, the defendants acted deliberately indifferent to Plaintiff's needs where their actions (i.e., classified him as a sex offender, implemented a mandatory sex offender program, and then rescinded his CCC placement) had an adverse affect on his liberty and life as well as his mental health which the defendants knew such actions would involve substantial risk of serious harm to his mental stake and liberty, but disregarded that risk by failing to stop after Plaintiff opposed such treatment. See Farmer v. Brennan, 128 L.Ed.2d 811 (1994)

Of course, the Plaintiff suffered from defendant's actions of classifying him as a sex offender and then placing him in such program especially when he was sentenced for drug trafficking offenses and served over 90 percent of his sentence before suddenly without notice or an opportunity to be heard he was transferred, placed in a mental health program for sex offenders, which resulted in his mental anguish, stress, and anxiety.

Actually, the Plaintiff had a due process right to be free from unnecessary created stress, anxiety and mental anguish when he did not have notice nor hearing prior to such conditions which imposed an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life. In other words, though prison life has some expectation of some form of stress and anxiety dued to incarceration, still to deliberately create an adverse condition which caused increase wanton stress , anxiety and mental anguish that otherwise did not exist is such deployable conditions that imposed an atypical and significant hardship on Plaintiff especially when such conditions

11.

could have been avoided.

Besides, the defendants exceeded their authority to classify him as a sex offender, or place him in a sex offender program since ¶4042(c) only provides the defendants the authority to use prisoners current convictions. See Simmon, supra; Henrikson, supra, which he had a vested "liberty interest" in such statute. Indeed, the Plaintiff was denied due process since he had a liberty interest not only in the Constitution's requirement that he be provided "notice" and "hearing" prior to being deprived of life or liberty, but also statute §4042(c) requires only current offenses be used to classify prisoners, or provide notification to law officials of prisoner's release.

Since both the Constitution and said Statute used mandatory language which limits the defendants' discretion then he had a vested liberty interest in such which were protected by the Due Process Clause.

Therefore, the defendants' failure to first provide Plaintiff some form of notice and a hearing (an opportunity to be heard) prior to them depriving him of life or liberty (i.e., assign him sex offender status, transfer him to a mental health facility for treatment in a mandatory sex offender program, provide him psychological or psychiatric treatment in sex offender program, rescind CCC halfway house placement, and cause him mental anguish, stress, and anxiety), just as the defendants failed to adhere to statute § 4042(c) when classifying him as a sex offender, placed him in a mental health sex offender program and deprived him of CCC placement, and caused him extreme stress, mental anguish and

12.

anxiety, which was done in violation of his Plaintiff's right
to Due Process.

Accord, the Defendants actions were deliberate indifferent to
Plaintiff's needs where they failed to provide him his Due Process
Requirements of a "Notice" and "Hearing" prior to depriving him of
life, or liberty, and failed to adhere to Statute 4042(c) when
classifying him, placing him in SOMP, and rescinding his  CCC
placement, which such treatments were unwarranted thus causing
him mental anguish, stress, and anxiety.

### C. The Defendants' Imposition of SOMP to Plaintiff Violated His RIght under Ex Post Facto Clause.

Section 9, of Article 1 of the Constitution, which enumerates
the powers of Congress, provides that "No Bill of Attainer of Ex
Post Facto Law shall be passed." The Supreme Court has long held
that an Ex Post Facto Law is one that "retroactively alter[s]
the definition of crimes or increase[s] the punishment for
criminal acts." Cal. Dep't of Corrections v. Morales, 514 U.S. 499,
115 S.Ct. 1597, 131 L.Ed.2d 588 (1996)(citing inter alia, Culder
v. Bull, 3 U.S. (3 Dal) 386, 391-92, 1 L.Ed. 648 (1798)

To succeed, an Ex Post Facto challenges must show that the law
in question "applies to conduct completed before its enactment,"
and that "it raises the penalty from whatever the law provided
when he acted." Johnson v. United States, 529 U.S. 694, 699,
120 S.Ct. 1795, 146 L.Ed.2d 727 (2000)

In other words, to fall within the Ex Post Facto prohibits,
a law must apply to events occurring before its enactment- and
it must disadvantage the offender affected it, by altering the

13.

definition of criminal conduct or increasing the punishment for the crime. Lynce v. Mathis, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) However, "[a] law need not impair a 'vested right' to violate the ex post facto prohibition." Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)

Equally important is that "[a] number of Courts have held that binding administrative regulations, such as BOP mandatory program statement that implement mandatory programs as opposed to those that serve merely as guidelines for discretionary decision-making are laws subject to ex post facto analysis." Hamm v. Catessa, 72 F.3d at 956 n.14.

In this case, the defendants' applied a new mandatory policy (SOMP) to conduct (prior sex offense) which occurred prior to its enactment- thus the defendants imposition of such policy had an disadvantage to the Plaintiff when he has already been punished or treated for such offenses, nor was such punishment defined by the offense. This being so, the defendants increased the punishment for his prior crime by applying a mandatory psychological/ psychiatric treatment program which has several adverse consequences and even more severe adverse consequences for failing to participate, which is an alteration of the defined punishment for such offense.

Here, the Plaintiff was not provide(d) a fair notice of such punishment (psychological treatment, notification, loss of CCC- halfway house, etc.) when at the time of the crime ( statutory rape) there was no requirement for either mandatory psychological treatment nor notification, Thus, this policy

14.

is punitive  when it requires the Plaintiff to be denied CCC-halfway house placement  for refusing to participate in such program, notification of Plaintiff as a sex offender, and subject him to psychological treatment (i.e., both mental and physical testing). See Doe I. v. Otte, 259 F.3d 979 (9th Cir. 2001)(alaska's sex offender law is punitive)

Incidentally, the defendants' implementation of this policy statement is otherwise more punitive than other laws when such program was conducted without any authority. After all, the BOP failed to implement such policy in accordance with the Notice and Comment Provisions of Administrative Procedures Act, which was invalid.  See 5  U.S.C. § § 551, 553 et seq.; Lopez v. Davis, 531 U.S. 230, 244, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001); Henrikson, supra, 249 F.3d at 398.

Because this policy (SOMP) is mandatory which limits the BOP/ defendants discretion it has the same force as any law. Monaham v. Winn, 276 F.Supp.2d at 213 However, since this policy was never implemented through the Administrative Procedure Act then such policy is invalid.  Unless such BOP policy statement (SOMP) is implemented in accordance with the notice and comment provisions of APA pursuant to 5 U.S.C. 551 et seq, then such policy is certainly invalid. Lopez, supra.

Surely, the BOP rule for SOMP is not the type excepted from APA when such is a substantive rule issued by the BOP pursuant to statutory authority and which implements the statute. Warder, 995 F.2d at 1109 Thus, the BOP violation of these prerequisite procedures (of APA) when implementing policy statement for SOMP

15.

renders the SOMP invalid. See Auers v. Robbbins, supra, 519
U.S. 425 (1997)

Therefore, the defendants acting deliberately indifferent
to Plaintiff's needs inflicted irreparable harm on him when
they labeled him a sex offender for the duration of his
incarceration, forced him to participate in a mandatory program
for sex offender which requires psychological treatment, and
caused him extreme mental anguish, stress and anxiety.

Accord, the defendants' policy (SOMP) violates the Ex Post
Facto Provision of the Constitution of the United States when it
has punished Plaintiff for acts that occurred before its
implementation, and further increases such punishment.

> D. **The Defendants' Implementation of the SOMP
> was Invalid since this Program was not
> Authorizes by POLICY through Administrative
> Procedure Act of 5 U.S.C. § 551 et seq.**

The Defendants' failure to implement the sex offender
mandatory program through policy statement pursuant to the
Administrative Procedure Act of 5 U.S.C. §§ 551, 553 et seq.
renders such policy/ program invalid.

The Defendants further had an obligation to comply with the
"notice and comment" rulemaking requirements of the Administrative
Procedure Act ("APA"). See 5 U.S.C. § 551; Lopez, supra, 531 U.S.
230 (2001)

It is refutable that the defendants  adopted its new "Rule"
(SOMP, i.e., that mandates classified sex offenders to participate
in a mandatory sex offender program) without engaging in the
rigorous "notice and comment" procedures set forth in the APA,
5 U.S.C. § 553. It is equally indisputable that, unless an agency

16.

rule is of a type excepted from the APA, violation of these procedural prerequisites renders it invalid. See Auer v. Robbins, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1979)

in this case, the BOP failed to implement the new rule for classified sex offenders in accordance with the notice and comment provisions of APA pursuant to 5 U.S.C. § 551 et seq.

Because the BOP failed to implement such mandatory policy/ program through the rigorous notice and comment procedures set forth in the APA then such policy statement thus program is invalid. Lopez, supra; Auer, supra.

## IV.   Conclusion

WHEREFORE, the Plaintiff prays that this Honorable Court GRANT him DECLARATORY JUDGMENT in this action to enjoin and restrain the Defendants from using Plaintiff's prior offenses to classify him as a sex offender; from forcing him to remain incarcerated in Devens- federal Medical Center; from forcing him to participate in SOMP, and from rescinding his CCC halfway house placement. Further, the Plaintiff respectfully request this Court award him punitive damages in the amount of $10,000 and compensatory damages in the amount of $5,000 from defendants as a result of their actions which violated Plaintiff's constitutional rights under the 1st, 5th and 8th Amendments. Further, the defendants should be order to pay such damages in order to deter further irreparable harm to Plaintiff and others, and to show them that their actions will not be tolerated.

In addtion, the Plaintiff prays that this honorable court

17.

grant any other relief it deem warrant in this case.

Respectfully submitted,

Dated:  October 2⅟, 2205.

Kevin Taylor

KEVIN TAYLOR
Reg. No. 03421-068
Pro se- Plaintiff
Federal Medical Center- Devens
P. O. Box 879
Ayer, MA 01432

## Certificate of Service

I hereby certify that a  true and correct copy of the
foregoing motion for Declaratory Judgment was served by first
class U.S. Mail on __2⅟__ day of October, 2005, upon the
defendants' attorney:

Michael J. Sullivan
United States Attorney
United States Courthouse
1 Courthouse Way, Ste. 9200
Boston, MA 02210

Kevin Taylor

18.