UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KEVIN G. TAYLOR,<br><br>    Plaintiff,<br><br>v.<br><br>HARLEY G. LAPPIN, Director,<br>Federal Bureau of Prisons;<br>C. BECOTTE, Chief Psychologist,<br>FMC Devens; S. BISCI, Social<br>Worker, Psychology and Mental<br>Health Department, FMC Devens;<br>C.J. DEROSA, Warden, FCI Fort Dix;<br>HERNANDEZ, Unit Manager,<br>FMC Devens; HUFNAGEL, Case<br>Manager, J-Unit, FMC Devens;<br>C. Mayo, Psychologist Technician,<br>FMC Devens; C. RENAUD,<br>Psychologist, FMC Devens;<br>D. RODRILL, Regional Director,<br>Northeast Regional Office,<br>Federal Bureau of Prisons;<br>J. STRICKLAND, Case Manager,<br>Unit 5752, FCI Fort Dix;<br>UNKNOWN UNIT MANAGER, FCI Fort<br>Dix, Unit Manager of Units 5752<br>and 5751; DAVID L. WINN, Warden,<br>FMC Devens,<br><br>    Defendants. | Civil Docket No.<br>04-40163-PBS |

**MEMORANDUM IN SUPPORT OF THE DEFENDANTS' MOTION
TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

The defendants, by their attorney, Michael J. Sullivan, U.S. Attorney for the District of Massachusetts, respectfully request that this Court dismiss the above-captioned matter or, in the alternative, grant summary judgment in the defendants' favor.

**STATEMENT OF FACTS**

The plaintiff, Kevin Taylor, Reg. No. 03421-068, is a federal inmate who has been incarcerated at the Federal Medical Center, Devens, Massachusetts (FMC Devens) since March 31, 2004. He was previously incarcerated at the Federal Correctional Institution Fort Dix, New Jersey from May 1, 2001 through March 31, 2004. See Document 1a, Public Information Data, p.1, attached to the Declaration of FMC Devens Attorney Advisor Ann H. Zgrodnik.[1]  On June 28, 1989, he was sentenced in the U.S. District Court for the Western District of Pennsylvania to a twenty (20) year term of incarceration with a three (3) year term of supervised release to follow for conspiracy to possess with intent to distribute and distribution of 3-methyl-fentanyl, in violation of 21 U.S.C. §846, and possession with intent to distribute and distribution of heroin, in violation of 21 U.S.C. §841(a)(1), (b)(1)(C). Id. at 3.  Assuming the plaintiff is granted all Good Conduct Time available to him under 18 U.S.C. § 3624 (b), his projected satisfaction date is July 19, 2006. Id. at 4.  In the event that all of his Good Conduct Time is disallowed, his full term expiration date is January 4, 2009. Id.

On March 31, 2004, the plaintiff was transferred to FMC Devens to participate in the Sex Offender Mandatory Program

---

[1] The Zgrodnik Declaration is attached as Document 1.

(SOMP).[2]  See Document 1a, p. 1; see also Document 2, Declaration

---

[2]  The Federal Bureau of Prisons (BOP) institutions are grouped into five different security levels: Minimum, Low, Medium, High, plus an Administrative category.  The security level of an institution is determined by its physical characteristics, such as the presence of mobile patrol officers, gun towers, and perimeter barriers, among several other factors.  Upon receipt of the United States Marshal's request to place an inmate at a BOP institution, a defendant's security and program needs are assessed as well as other administrative factors unique to the correctional environment.  The assignment of an inmate to a particular institution is based upon: 1) the level of security and supervision the inmate requires; 2) the level of security and staff supervision the institution is able to provide; 3) the inmate's program needs; and 4) various administrative factors such as, but not limited to the level of overcrowding, the inmate's release residence, judicial recommendations, separation needs, increased security measures to ensure the protection of victims/witnesses, and the public in general.  See Document 1e, Program Statement 5100.07 (January 31, 2002), Security Designation and Custody Classification Manual, at Chapter 1, pp. 1-2.

Custody classification is a "procedure whereby inmates are assigned levels according to their criminal histories and institutional behavior/adjustment."  See Document 1e, Chapter 8, p. 1.  An inmate's initial custody classification is scored at the first program review following initial classification (approximately 7 months after arrival at the institution).  Subsequent reviews occur at least every 12 months, but may be conducted earlier.  Custody classification ordinarily occurs in conjunction with every second program review.  Id.

BOP policy states, "there are certain factors which require increased security measures to ensure protection of society."  See Document 1e, Chapter 7, p, 1.  These are known as Public Safety Factors (PSFs) and Management Variables.  See Document 1e, Chapter 7, p. 1.  There are nine PSFs enumerated in Program Statement 5100.07.  Of the nine PSFs, the PSF for Sex Offender was applied to the plaintiff.  See Document 1f, Male Custody Classification Form.  According to BOP policy, the PSF for Sex Offender applies to inmates whose behavior in the current term of confinement or prior history includes any of the following characteristics: 1) Engaging in sexual contact with another person without obtaining permission to do so (forcible rape, sexual assault or sexual battery); 2) Possession, distribution or mailing of child pornography or related paraphernalia; 3) Any sexual contact with a minor or other person physically or

3

of Cheryl A. Renaud, Ph.D., ¶5.

On or about August 24, 2005, the plaintiff commenced this <u>Bivens</u>[3] action in the U.S. District Court for the District of Massachusetts, as an action under 28 U.S.C. § 1331.  The plaintiff alleges his constitutional rights were violated as a result of being "forcibly placed in a sex offender mandatory program for mental illness treatment which inflicted needless suffering, wanton mental anguish and created an environment which threaten his physical and mental well-being . . ."  <u>See</u> Amended Complaint, p. 3.  He further claims that the defendants acted negligently and with deliberate indifference to the plaintiff when "they forced upon him adverse sanctions as a result of his refusal to participate in SOMP . . ."  <u>Id</u>.  He alleges that his placement in the "SOMP has led him to continuous tension, stress,

---

mentally incapable of granting consent; 4) Any sexual act or contact that is aggressive or abusive in nature (rape by instrument, encouraging use of a minor for prostitution purposes, incest), or 5) Any offense referenced in the Sex Offender Notification and Registration Program Statement, among other characteristics.  <u>See</u> Document 1e, Chapter 7, p. 2.

The plaintiff's custody classification form reflects that he has been classified as low security pursuant to Program Statement 5100.07, Chapter 7.  <u>See</u> Document 1f.

[3] The plaintiff is a federal inmate alleging constitutional violations against federal defendants, his claims are therefore brought pursuant to <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), which established that the victims of constitutional violations by federal agents have a right to recover damages against that official in federal court, just as 42 U.S.C. § 1983 provides redress for constitutional violations by state officials.

anxiety and physical duress which is caused by his confrontation with other inmates who treat him verbally and psychologically as a sex offender." Id. at 9.  Additionally, the plaintiff alleges that the defendants acted with deliberate indifference by subjecting him to treatment for acts he was treated and served sentences for in 1975 and 1980.  See Original Complaint, p. 3a. As relief, the plaintiff requests to be removed from the SOMP, transferred to a Federal Correction Institution in the Northeast Region, and receive compensatory damages in the amount of $15,000 from each defendant.  Id. at 4.

**ARGUMENT**

**I.   The "unknown" defendant should be dismissed for lack of personal jurisdiction.**

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  Omni Capital International v. Rudolph Wolff & Co., 484 U.S. 97 (1987).  Accordingly, unless a defendant voluntarily makes an appearance or otherwise waives the lack of personal jurisdiction, personal jurisdiction must be acquired through proper service of process.  E.g., Young v. Quinlan, 960 F.2d 351, 356 n.9 (3d Cir. 1992).

The one unnamed "Unknown Unit Manager" defendant in this matter has not been served.  Therefore, unless the "unknown" defendant voluntarily makes an appearance or otherwise waives the lack of personal jurisdiction, the Court lacks personal

5

jurisdiction over him or her.  As a general rule, the use of "Unknown Defendant" or "John Doe" to identify a defendant is not favored.  Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980); see also Wiltsie v. California Department of Corrections, 406 F.2d 515, 518 (9th Cir. 1968).  In the Third Circuit, "John Doe" claims are ordinarily disregarded absent a showing by the plaintiff that they are indispensable to the litigation.  Young, supra; see generally Kiser v. General Electric Corp., 831 F.2d 423, 426 n.6 (3d Cir. 1987).  However, situations may arise where the identity of an alleged defendant will not be known prior to the filing of a complaint.  In such circumstances, it has been held that a plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities or that the complaint would be dismissed on other grounds.  Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978), cert. denied, 439 U.S. 970 (1978); see Wells Fargo Express Co., 556 F.2d 406, 430-31 n. 24 (9th Cir. 1977); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n. 13 (1978).  This exception is inapplicable in the instant case because the identity of the alleged "unknown" defendant was readily available to the plaintiff prior to the filing of this civil action.  Indeed, as a federal employee, the name of the "unknown" defendant is public information and continues to be available to the plaintiff who has not attempted personal

service.  Therefore, because the plaintiff has failed to personally name and serve the "unknown" defendant, the Court lacks personal jurisdiction over him or her.  As such, this case should be dismissed as to the one "unknown" defendant.

II. **The plaintiff fails to state any Bivens claim against the individual defendants as he has failed to allege that they committed any specific unconstitutional acts**.

The plaintiff alleges that the defendants violated his constitutional rights as a result of placing him in the SOMP for mental illness treatment.  See Amended Complaint, p. 3.  In this Bivens action against the individual defendants, because the plaintiff has failed to articulate a claim on the issue of due process, the complaint should be dismissed as to each named defendant.

In a Bivens action, the complaint must allege specific actions committed by each defendant who violated the plaintiff's constitutional rights in order to state a claim against the defendant.  Alfaro Motors, Inc. v. Ward, 814 F.2d 883 (2d Cir. 1987); Hankard v. Town of Avon, 126 F.3d 418 (2d Cir. 1997).  The mere recitation of appropriate charging language does not satisfy the plaintiff's pleading requirements.  Dewick v. Village of Penn Yan, 972 F.Supp. 166 (W.D.N.Y. 1997).  It is well established that complaints relying on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general

7

conclusions that shock but have no meaning.  Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987); Mendlow v. Seven Locks Facility, 86 F.Supp.2d 55, 59 (D.Conn. 2000).  "[A]llegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under §1983."  Alfaro Motors, Inc. v. Ward, 814 F.2d 883 (2d Cir. 1987)(citations omitted); see also Wright v. Smith, 21 F.3d 496 (3d Cir. 1994); Ostrer v. Aronwald, 567 F.2d 551 (2d Cir. 1977).

    This does not necessarily conflict with the Supreme Court's recent ruling in Swierkiewicz v. Sorema N.A., 122 S.Ct. 992 (2002).  In that case, the Court held that a complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts.  Nance v. Vieregge, 147 F.3d 589, 590-91 (7th Cir. 1998).  The federal rules require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid.  Id.

    In the instant action, the complaint has failed to allege a single unconstitutional act or omission committed by the individually named defendants.  As stated above, conclusory allegations without supporting facts or allegations against each named defendant cannot form a Bivens claim upon which relief may be granted.  Here, the defendants contend that the plaintiff

failed to plead the minimum required by Rule 8 of the Federal Rules of Civil Procedure on this <u>Bivens</u> claim of deliberate indifference.  The plaintiff's complaint does not specifically allege that the defendants personally engaged in any action or omission in furtherance of a constitutional violation.  He merely alleges that the defendants forced him to participate in a "sex offender mandatory program for mental illness treatment" at FMC Devens.  <u>See</u> Amended Complaint, p. 3.  The allegations set forth in the complaint against all the defendants lack specificity and are too vague to establish a <u>Bivens</u> suit.  Therefore, the plaintiff has failed to establish any claim against these defendants with the required specificity.

Accordingly, the plaintiff fails to state any <u>Bivens</u> claim against the individual defendants as he has failed to allege that they committed any specific unconstitutional acts.  Such being the case, the defendants respectfully request that this Court dismiss the claims against the named defendants or, in the alternative, grant summary judgment in their favor.

**III. The defendants are entitled to dismissal on the basis of qualified immunity since the allegations of the complaint do not amount to the violation of a clearly established constitutional right.**

All the named defendants are entitled to dismissal from this <u>Bivens</u> suit on the basis of qualified immunity. When qualified immunity is raised by a defendant, the plaintiff cannot maintain a <u>Bivens</u> action against the defendant unless and until the

plaintiff shows the defendant violated a clearly established constitutional right. Siegart v. Gilly, 500 U.S. 226, 232 (1991); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Saucier v. Katz, 533 U.S. 194, 194-195 (2001). A federal government employee is generally entitled to immunity from suit for personal damages if his or her conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Siegart v. Gilley, 500 U.S. at 232; Anderson v. Creighton, 483 U.S. 635 (1987); Mitchell v. Forsyth, 472 U.S. 511 (1985); Davis v. Scherer, 468 U.S. 183, 197 (1984). The qualified immunity defense in this context is "an immunity from suit rather than a mere defense from liability." Mitchell v. Forsyth, 472 U.S. at 526. In recognition of this, the Supreme Court has repeatedly stressed the desirability to resolve the qualified immunity issues at the earliest stage of litigation. Hunter v. Bryant, 502 U.S. 224, 226 (1991); Anderson v. Creighton, supra; Mitchell v. Forsyth, supra.

Once the individual defendants raise qualified immunity, courts must resolve two issues: 1) whether a constitutional right would have been violated on the facts alleged; and assuming the violation is established (from the pleadings), 2) whether the right alleged to have been violated was clearly established. Saucier v. Katz, 533 U.S. at 194-195.

In Saucier, *supra*, the Supreme Court held that in a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence.  Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.  Id.

The specific qualified immunity inquiry is twofold: first, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established.  Saucier, 500 U.S. at 194.

The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Id. at 194-195; see also Wilson v. Layne, 526 U.S. 603, 615 (1999).  An analysis of the plaintiff's claims against each of the individual defendants reveals that the plaintiff failed to state a constitutional violation against any

of the defendants, because the complaint does not articulate what actions each named defendant took to violate his constitutional rights.

Even assuming arguendo, the complaint could be interpreted to sufficiently state each named defendant committed unconstitutional acts, the plaintiff has failed to articulate how these constitutional rights were clearly established. Anderson v. Creighton, 483 U.S. at 640.

Accordingly, under the facts as alleged in the complaint, each of the named defendants is entitled to qualified immunity and should be dismissed from this lawsuit or, in the alternative, summary judgment granted in their favor.

**IV. The defendants named because of their administrative capacities cannot be held liable via respondeat superior.**

As is the case with actions under 42 U.S.C. §1983, respondeat superior liability does not exist under Bivens. Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1987). Instead, a defendant is liable for his personal acts only. Id. The general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability. Id., citing Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987); see also Rizzo v. Goode, 423 U.S. 362 (1976)(The defendants in Bivens action dismissed if no personal involvement or participation in alleged unconstitutional actions.); Durmer v. O'Carroll, 991 F.2d 64 (3rd Cir. 1993)(Respondeat superior is not

12

acceptable basis for liability under §1983.).

The Court in Estate of Rosenberg, supra, stated that a bare allegation that someone in supervisory authority has been deliberately indifferent, without any specification of that person's contact in fact with the plaintiff nor even an explicit charge of inadequate training or supervision of subordinates, is not sufficient to state a Bivens claim. Estate of Rosenberg, 56 F.3d at 38. In Durmer v. O'Carroll, 991 F.2d at 69, the Court held that the Warden and Commissioner for Corrections, neither of whom were physicians, could not be considered deliberately indifferent to prisoner's medical needs simply because they failed to respond directly to medical complaints of prisoner, who was already being treated by the prison doctor. There the inmate had sent them letters explaining his situation to which they did not respond.

The plaintiff does not identify any direct involvement by defendants Winn, DeRosa, Lappen, Dodrill, Becotte, and Renaud in the alleged constitutional violations. Rather, the plaintiff merely names them in the complaint in their respective capacities. Thus, as the case law establishes, the plaintiff has no viable cause of action against them. See Estate of Rosenberg, 56 F.3d at 37; Rizzo, 423 U.S. 362.

It is clear from the complaint that the plaintiff's suit is based upon the defendants' general responsibilities of

supervision and fail to point to any specific personal involvement or participation in an alleged constitutional violation.  These defendants should not be held accountable for any alleged infringement of the plaintiff's constitutional rights when they had nothing to do with the course of treatment itself.

Accordingly, these defendants are entitled to dismissal from the complaint on the basis of qualified immunity since the allegations against them do not state a violation of a clearly established constitutional right.

**V.   Verbal abuse or mere threats do not rise to the level of a constitutional violation.**

The plaintiff alleges that he has been forced to participate in the mandatory Sex Offender Management Program "for mental illness treatment" by all the defendants.  See Amended Complaint, p. 3.  Furthermore, the plaintiff contends this has created an environment which threatens "his physical and mental well-being." Id at pp. 3 - 4.  He also claims that the defendants forced adverse sanctions as a result of his refusal to participate in the program. Id. at p. 4.

It is well-settled that verbal harassment, even verbal threats made by a government actor, without some reinforcing act accompanying them, do not suffice to state a Bivens claim. Hopson v. Fredericksen, 961 F.2d 1374 (8th Cir. 1992); Maclean v. Secor, 876 F.Supp. 695 (E.D.Pa. 1995); Meadows v. Gibson, 855 F.

14

Supp. 223 (W.D.Tenn. 1994); Murray v. Woodburn, 809 F.Supp. 383 (E.D.Pa. 1993); Prisoner's Legal Association v. Robertson, 822 F.Supp. 185 (D.N.J. 1993); see also, Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985)(citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), cert. denied, 464 U.S. 998 (1983).

The plaintiff provides no evidence of his allegations. He merely states that the alleged verbal threats and harassment occurred and follows up by stating a bare conclusory allegation that he this program has created an environment which threatens his physical and mental well-being. In fact, the record indicates that the SOMP is a management program and is not a mental illness treatment program. See Declaration of SOMP Coordinator, Cheryl A. Renaud, Ph.D., ¶4.[4] Records also indicate that the plaintiff has refused to participate in the most general aspects of the program and has not been forced to participate in sex offender treatment. See Document 2 at ¶5-9.

Accordingly, the defendants respectfully request that the allegations of threats and harassment be dismissed or, in the alternative, that summary judgment be granted in favor of the defendants as the allegations do not state a constitutional claim.

**VI. The plaintiff is not entitled to the relief requested because he has no protected liberty interest in being assigned to a particular institution.**

---

[4] The Renaud Declaration is attached as Document 2.

The plaintiff alleges that his due process rights were violated as a result of him being transferred to FMC Devens to participate in a sex offender mandatory program.  See Amended Complaint, p.3.  As relief, he requests that he be transferred to a Federal Correctional Institution in the Northeast Region.  See Original Complaint, p. 4.  This claim lacks merit because federal prisoners do not have a protected liberty interest in being assigned to a particular institution.  It is well settled that, in general, an inmate does not have a liberty interest to a particular security classification.  See Sandin v. Conner, 515 U.S. 472, 486 (1995); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976); Newell v. Brown, 981 F.2d 880, 883 (6th Cir.1992); Beard v. Livesay, 798 F.2d 874, 876 (6th Cir.1986).

Moreover, there is no right in the Constitution in an inmate to be assigned to a particular institution or program.  Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976); Young v. Quinlan, 960 F.2d 351, 358 n. 16 (3d Cir. 1992); Pugliese v. Nelson, 617 F.2d 916 (2d Cir. 1980); Lott v. Arroyo, 785 F.Supp. 508 (E.D.Pa. 1991) (Constitution does not confer on state inmate right to participate in pre-release program).  In Moody v. Daggett, 429 U.S. 78 (1976), the Supreme Court addressed a challenge to the impact of a detainer on prison programming.

16

The Court noted:

> We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. In <u>Meachum v. Fano</u>, 417 U.S. 215 . . . (1976), for example, no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate. The same is true of prisoner classification and eligibility of rehabilitative programs in the federal system.  Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. §4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.

<u>Moody v. Daggett</u>, 429 U.S. at 88 n.9 (citation partially ommitted).

In <u>Pugliese v. Nelson</u>, 617 F.2d 916, 923-925 (2d Cir. 1980), the Second Circuit examined the statutes in effect in 1981 applicable to institutional placement and community programs, 18 U.S.C. §§ 4081 and 4082, and found that the statutes vested in the Attorney General "complete and absolute discretion with respect to the incarceration, classification, and segregation of lawfully convicted prisoners." 617 F.2d at 923. The authority of the Attorney General under these statutes has been delegated to the BOP.  28 C.F.R. §0.96.

Under 18 U.S.C. §3621 (1987), the discretion to designate the place of incarceration has been retained and specifically conferred in the BOP. <u>United States v. Laughlin</u>, 933 F.2d 786 (9th Cir. 1991). The First Circuit has also addressed this issue

and found that "[d]ecisions to place a convicted defendant within a particular treatment program or a particular facility are decisions within the sole discretion of the Bureau of Prisons." United States v. Melendez, 279 F.3d 16, 18 (1st Cir. 2002), quoting Thy v. United States, 109 F.3d 127, 130 (2d Cir. 1997). The BOP may at any time direct the transfer of a prisoner from one penal or correctional facility to another. 18 U.S.C. 3621 (b). In the plaintiff's case, he was transferred from the Federal Correctional Institution Fort Dix, New Jersey to FMC Devens to participate in the SOMP. See Document 2, ¶5.

Because inmates have no protected liberty interest in being assigned to a particular institution, or a particular classification, the plaintiff is not entitled to the relief requested. As such, the complaint should be dismissed or, in the alternative, summary judgment granted in the defendants favor.

**VII. The plaintiff was properly assigned to the sex offender management program.**

The plaintiff contends that he was transferred to FMC Devens to participate in the SOMP for mental illness treatment. See Amended Complaint, p. 3. The plaintiff's claim lacks merit as he was appropriately placed in the SOMP.

Title 18 United States Code §3621 grants the BOP the general authority to establish programs necessary to assist in the correctional management of inmates. In December 2002, the BOP "approved the development and implementation of a comprehensive

18

management strategy for all sex offenders in the BOP."  See Document 2, Declaration of Cheryl A. Renaud, Ph.D., ¶3.  The SOMP is a management program and is not a mental illness treatment program.  Id. at ¶4.  The SOMP at FMC Devens was activated on March 1, 2004. Id. at ¶3.  According to the Inmate Handbook, the SOMP is a mandatory program at FMC Devens for all inmates who have been assigned the Public Safety Factor of Sex Offender and have been classified as low or medium security inmate.  See Document 1g, Sex Offender Management Program Inmate Handbook, dated May 14, 2004, p. 2.

Records indicate that the plaintiff has been assigned a Public Safety Factor of Sex Offender and is classified as a low security inmate.  See Document 1f.  Thus, the plaintiff was properly assigned to the SOMP and this placement was a proper exercise of the discretion of the BOP.  See Fox v. Lappin, 409 F.Supp.2d 79, 90 (D.Mass. 2006) (The use of a prior state conviction in classifying an inmate within the federal prison system is not an abuse of that discretion.).

Accordingly, the plaintiff's claim that he should be removed from the SOMP should be dismissed or, in the alternative, summary judgment granted in the defendants' favor.

**CONCLUSION**

For the reasons discussed above, the plaintiff's complaint should be dismissed or, in the alternative, summary judgment granted in the defendants' favor.

```
                              Respectfully submitted,

                              UNITED STATES OF AMERICA
                              By its attorney,

                              MICHAEL J. SULLIVAN
                              United States Attorney

Dated: May 17, 2006    By:    /S/ Christopher R. Donato
                              Christopher R. Donato
                              Assistant U.S. Attorney
                              U.S. Attorney's Office
                              John Joseph Moakley Courthouse
                              1 Courthouse Way, Suite 9200
                              Boston, MA 02210
                              (617) 748-3100
```

**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the above document was served by first class mail, postage prepaid, upon the *pro se* plaintiff at the following address:

Kevin Taylor
Inmate # 03421-068
FMC - Devens
P.O. Box 879
Ayer, MA 01432

```
Dated: May 17, 2006           /S/ Christopher R. Donato
                              Christopher R. Donato
                              Assistant U.S. Attorney
```