# Document 1e

PS 5100.07
9/3/99
Chapter 1, Page 1



Bureau of Prisons institutions are grouped into security levels: **MINIMUM, LOW, MEDIUM, HIGH,** plus an **ADMINISTRATIVE** category. Seven factors are required to support an institution's security level:

- mobile patrol,
- gun towers,
- perimeter barriers,
- detection devices,
- internal security,
- housing, and
- inmate-to-staff ratio.

Upon receipt of the U.S. Marshals request to place an inmate at a Bureau institution, the Community Corrections Manager assesses the offender's security and program needs, as well as other administrative factors unique to a correctional environment.

The assignment of an inmate to a particular institution is based upon:

> The level of security and supervision the inmate requires;
>
> The level of security and staff supervision the institution is able to provide;
>
> The inmate's program needs, i.e., substance abuse, educational/vocational training, individual and/or group counseling, medical/mental health treatment; and,
>
> Various administrative factors such as, but not limited to,
>
> - level of overcrowding,
> - the inmate's release residence,
> - judicial recommendations,
> - separation needs,
> - increased security measures to ensure the protection of victims/witnesses and the public in general.

There are two distinct systems of classification; one for male and one for female offenders. While each classification item is reviewed for each gender, different points may be assessed for the item. The point difference is a result of research conducted

which indicates that men and women do not react the same in similar situations.

Initial designations to Bureau (**or** BOP) institutions are accomplished by:

    (1) Community Corrections Managers entering information into a computer database (SENTRY) to compute a security score, and
    (2) Regional and/or Central Office Designators designating an institution based on the score.

A Security/ Designation Data form is required for any inmate with a sentence exceeding **30 days.** Designations to non-federal facilities may also be completed by Community Corrections Managers. Redesignations (transfers) from one Bureau institution to another are also accomplished by Regional and Central Office staff based upon many of the same factors used at the time of initial designation.

The Custody Classification Form (BP-338) may indicate reduced or increased security requirements based on consideration of both pre-commitment and post-commitment variables. Four inmate custody levels are established: **MAXIMUM, IN, OUT, and COMMUNITY.** The lowest level of custody, **COMMUNITY,** is ordinarily reserved for those inmates who meet the qualifications for participation in community activities.

This Manual establishes guidelines for designating the place of imprisonment for each individual. These guidelines are consistent with statutory authority as contained in 18 U.S.C. § 3621(b). All designation and transfer decisions are made without favoritism given to an individual's social or economic status.

> ## PUBLIC SAFETY FACTORS AND MANAGEMENT VARIABLES

### PUBLIC SAFETY FACTORS

There are certain factors which require increased security measures to ensure the protection of society.  Staff shall apply any of the following Public Safety Factors (PSF) that are appropriate.  Up to three PSFs may be entered on the Update Security Designation (BP-337).  If more than three applicable Public Safety Factors are identified, use those which would most appropriately control the inmate's placement.

**CODE**               **DESCRIPTION – PSF**

**A**     **NONE**.  No Public Safety Factors apply.

**B**     **DISRUPTIVE GROUP**.  A **male** inmate who is a validated member of a Disruptive Group identified in the Central Inmate Monitoring System shall be housed in a High security level institution, unless the PSF has been waived.

   **Note:**  At the time of initial designation, if the PSI or other documentation identifies the inmate as a possible member of one of the Central Inmate Monitoring Disruptive Groups, Community Corrections (CC) staff shall indicate a PSF on the BP-337.  However, CC staff shall not enter the CIM assignment "Disruptive Group."  Upon loading this PSF on a not-yet-validated member, CC staff shall 1) make a notation in the remarks section to indicate the need for validation upon arrival at the institution, and  2) notify the Central Office Intelligence Section, via GroupWise, to advise them of the inmate's status.  Upon the inmate's arrival at the designated institution, the intake screener shall notify the institution's Special Investigation Supervisor (SIS) of the inmate's PSF, in order to begin the validation process.

**C**     **GREATEST SEVERITY OFFENSE**.  A **male** inmate whose current term of confinement falls into the "Greatest Severity" range according to the Offense Severity Scale  (Appendix B) shall be housed in at least a Low security level institution, unless the PSF has been waived.

PS 5100.07
9/3/99
Chapter 7, Page 2

**CODE**        **DESCRIPTION - PSF**

F    **SEX OFFENDER.**  A **male** or **female** inmate whose behavior in
     the current term of confinement or prior history includes
     one or more of the following elements shall be housed in
     at least a Low security level institution, unless the PSF
     has been waived.  A conviction is not required for
     application of this PSF if the PSI, or other official
     documentation, clearly indicates the following behavior
     occurred in the current term of confinement or prior
     criminal history.  If the case was dismissed or nolle
     prosequi, application of this PSF cannot be entered.
     However, in the case where an inmate was charged with an
     offense that included one of the following elements, but
     as a result of a plea bargain was not convicted,
     application of this PSF should be entered.

     **Example:**  According to the PSI, the inmate was
     specifically described as being involved in a Sexual
     Assault but pled guilty to Simple Assault.  Based on the
     documented behavior, application of this PSF should be
     entered.

     (1)  Engaging in sexual contact with another person
     without obtaining permission to do so (forcible rape,
     sexual assault or sexual battery);

     (2)  Possession, distribution or mailing of child
     pornography or related paraphernalia;

     (3)  Any sexual contact with a minor or other person
     physically or mentally incapable of granting consent
     (indecent liberties with a minor, statutory rape, sexual
     abuse of the mentally ill, rape by administering a drug or
     substance);

     (4)  Any sexual act or contact not identified above that
     is aggressive or abusive in nature (rape by instrument,
     encouraging use of a minor for prostitution purposes,
     incest).  Examples may be documented by state or Bureau of
     Prisons' incident reports, clear NCIC entries, or other
     official documentation;

     (5)  Attempts are to be treated as if the sexual act or
     contact was completed; and/or,

     (6)     Any offense referenced in the Sex Offender
     Notification and Registration Program Statement.

CODE            DESCRIPTION - PSF

G       **THREAT TO GOVERNMENT OFFICIALS**.  A **male** or **female** inmate
        classified with a Central Inmate Monitoring
        assignment of Threat to Government Official shall be
        housed in at least a Low security level institution,
        unless the PSF has been waived.

H       **DEPORTABLE ALIEN**.  A "Deportable Alien" is a **male** or
        **female** inmate who is a citizen of a foreign country,
        rather than the United States.  In addition, the inmate
        shall be housed in at least a Low security level
        institution, unless the PSF has been waived.  This PSF
        also prevents placement in a CCC.  Unless an inmate meets
        all of the below criteria, the PSF shall be applied:

        (1)  **Documented and/or independently verified history of
        stable employment in the U.S.** for at least three years
        immediately prior to incarceration.  Stable or regular
        employment is generally defined as full-time (40 hours a
        week) work.  Part-time or seasonal work prior to
        incarceration does not meet the definition of stable
        employment;

        (2)  **Verified history of domicile in the U.S.** (five or
        more consecutive years immediately preceding the inmate's
        incarceration for the current term of confinement).  For
        example, if an inmate was arrested and detained in March
        1993 on his or her current conviction and was in the U.S.
        between 1980 and 1984, and again between 1992 and 1993, a
        PSF for Deportable Alien shall be applied since the five
        years were not
        consecutive and did not immediately precede his or her
        incarceration; and,

        (3)  **Verified strong family ties in the U.S.**  Strong
        family ties include **only** the immediate family.  Members of
        immediate family include: mother, father, step-parents,
        foster parents, brothers and sisters, spouse, and
        children.  The word "spouse" includes a common-law
        relationship which has previously been established in a
        state which recognizes such a status.  In states which do
        not, a common-law relationship is not considered
        "immediate family."  For determination of applicable state
        laws, Regional Counsel should be consulted.

**CODE**             **DESCRIPTION – PSF**

The defendant or the family member's statement to the USPO preparing the PSI is not considered adequate verification for criteria (1) and (2) above.

**The PSF shall not be applied when the Immigration and Naturalization Service (INS) or the Immigration Judge has determined that deportation proceedings are unwarranted and the Institution Hearing Program (IHP) Case Management Activity (CMA) assignment of NO IHP or IHP CMP ND is assigned. Conversely, if the inmate is ordered deported (CMA of IHP CMP WD), the Deportable Alien PSF shall be applied regardless of the above criteria. The Deportable Alien PSF shall also be applied when FCI Oakdale institution staff assign the inmate a CMA assignment of "OAK INS," regardless of the above criteria. Cases with detainers for deportation investigations or other unusual situations will be evaluated individually.**

I       **SENTENCE LENGTH**.  A **male** inmate with more than ten years remaining to serve shall be housed in at least a Low security level institution unless the PSF has been waived.

A **male** inmate with more than 20 years remaining to serve shall be housed in at least a Medium security level institution, unless the PSF has been waived.

A **male** inmate with more than 30 years remaining to serve (including non-parolable LIFE sentences) shall be housed in a High security level institution unless the PSF has been waived.

K       **VIOLENT BEHAVIOR**.  A **female** inmate whose current term of confinement or history involves two convictions (or findings of commission of a prohibited act by the DHO) for serious incidents of violence within the last five years shall be assigned to the Carswell Administrative Unit, FMC Carswell, Texas, unless the PSF has been waived.

L       **SERIOUS ESCAPE**.  A **female** inmate who has been involved in a serious escape within the last ten years, including the current term of confinement, shall be

**CODE**              **DESCRIPTION - PSF**

assigned to the Carswell Administrative Unit, unless the PSF has been waived.

A **male** inmate who has escaped from a secure facility (prior or instant offense) with or without the threat of violence or who escapes from an open institution or program with a threat of violence shall be housed in at least a Medium security level institution, unless the PSF has been waived.

**M**      **PRISON DISTURBANCE.** A **male** or **female** inmate who was involved in a serious incident of violence within the institution and was found guilty of the prohibited act(s) of Engaging, Encouraging a Riot, or acting in furtherance of such as described in, but not limited to institution disciplinary codes such as 103, 105, 106, 107, 212, 213 or 218. Such a finding must be in conjunction with a period of multiple institution disruptions. Males will be housed in at least a HIGH security level institution and females shall be assigned to the Carswell Administrative Unit, unless the PSF has been waived.

*      **N**      **JUVENILE VIOLENCE.** A current male or female juvenile offender who has any documented single instance of violent behavior, past or present, which resulted in a conviction, a delinquency adjudication, or finding of guilt. Violence is defined as aggressive behavior causing serious bodily harm or death or aggressive or intimidating behavior likely to cause serious bodily harm or death (e.g., aggravated assault, intimidation involving a weapon, or arson).

**O**      **SERIOUS TELEPHONE ABUSE.** A male or female inmate who utilizes the telephone to further criminal activities or promote illicit organizations and who meets the criteria outlined below, must be assigned a PSF for Serious Telephone Abuse. A conviction is **not required** for the PSF if the Pre-Sentence Investigation (PSI) or other official documentation clearly indicates that the above behavior occurred or was attempted. An inmate who meets this criteria must be housed in at least a Low security level institution, unless the PSF is waived.

PS 5100.07
CN-2 1/31/2002
Chapter 7, Page 6

The PSF should be entered if any **one** of the following criteria applies.

(1)  PSI or comparable documentation reveals the inmate was involved in criminal activity facilitated by the telephone who:

- meets the definition of a leader/organizer or primary motivator; or

- utilized the telephone to communicate threats of bodily injury, death, assaults, or homicides; or

- utilized the telephone to conduct significant fraudulent activity (actual or attempted) in an institution; or

- leader/organizer who utilized the telephone to conduct significant fraudulent activity (actual or attempted) in the community; or,

- arranged narcotic/alcohol introductions while confined in an institution.

(2)  Federal law enforcement officials or a U.S. Attorney's Office notifies the Bureau of Prisons of a significant concern and need to monitor an inmate's telephone calls;

(3)  The inmate has been found guilty of a 100 or 200 level offense code for telephone abuse.  (Note: 200 level offense codes will be reviewed on a case-by-case basis to determine whether the inmate meets the criteria for a PSF Serious Telephone Abuse).; or,

(5)  A Bureau of Prisons official has reasonable suspicion and/or documented intelligence supporting telephone abuse.

**Note:**  Any inmate who is assigned the Serious Telephone Abuse PSF may be subject to restricted use of the telephone in accordance with Program Statement on Telephone Regulations for Inmates.                  *

### DISCONTINUED PUBLIC SAFETY FACTORS

**D**     Firearms
**E**     High Drug
**J**     Designation Assessment

**REQUEST FOR PUBLIC SAFETY FACTOR WAIVER.** Only the Regional Director or designee is authorized to waive a PSF. A request for waiver of a PSF shall be submitted to the Regional Office via GroupWise form EMS 409, available on BOPDOCS. The form shall be completed as described below:

(1)  This item should indicate the request is for waiver of a Public Safety Factor.

(2)  This item should indicate whether the inmate agrees with the recommended team action. If appropriate, an explanation should be provided.

(3)  This item should include current, complete, and accurate information concerning any medical problems the inmate is experiencing.

(4)  This item should include a brief description of the inmate's adjustment during this period of incarceration.

(5)  This item should provide disciplinary information including all actions reflected on the current Custody Classification Form (BP-338). Significant histories should be summarized.

(6)  It is important that the rationale include complete and specific information providing justification to support the requested action.

(7)  Indicate whether or not the inmate is eligible for a parole hearing. If yes, indicate the date of the hearing.

PS 5100.07
CN-2 1/31/2002
Chapter 7, Page 7

Table 7-1

| SECURITY DESIGNATION TABLE (MALES) | | |
|---|---|---|
| INMATE SECURITY LEVEL ASSIGNMENTS BASED ON CLASSIFICATION SCORE AND PUBLIC SAFETY FACTORS | | |
| Classification Score | Public Safety Factors | Inmate Security Level |
| **0 - 5** | **No Public Safety Factors**<br>Deportable Alien<br>Juvenile Violence<br>Greatest Severity Offense<br>Sex Offender<br>Serious Telephone Abuse<br>Threat to Government Officials<br>Sentence Length<br> Time remaining > 10 Yrs<br> Time remaining > 20 Yrs<br> Time remaining > 30 Yrs<br>   Includes non-parolable LIFE/<br>   Death penalty cases<br>Serious Escape<br>Disruptive Group<br>Prison Disturbance | **Minimum**<br>Low<br>Low<br>Low<br>Low<br>Low<br>Low<br><br>Low<br>Medium<br>High<br><br><br>Medium<br>High<br>High |
| **6 - 8** | **No Public Safety Factors**<br>Serious Escape<br>Sentence Length<br> Time remaining  > 20 Yrs<br> Time remaining  > 30 Yrs<br>   Includes non-parolable LIFE/<br>   Death penalty cases<br>Disruptive Group<br>Prison Disturbance | **Low**<br>Medium<br><br>Medium<br>High<br><br><br>High<br>High |
| **9 - 14** | **No Public Safety Factors**<br>Disruptive Group<br>Prison Disturbance<br>Sentence Length<br> Time remaining  > 30 Yrs<br>   Includes non-parolable LIFE/<br>   Death penalty cases | **Medium**<br>High<br>High<br><br>High |
| **15 +** | | **High** |

**Table 7-2**

| SECURITY DESIGNATION TABLE (FEMALES) | | |
|---|---|---|
| INMATE SECURITY LEVEL ASSIGNMENTS BASED ON CLASSIFICATION SCORE AND PUBLIC SAFETY FACTORS | | |
| Classification Score | Public Safety Factors | Inmate Security Level |
| **0 - 10** | **No Public Safety Factors**<br>Deportable Alien<br>Juvenile Violence<br>Sex Offender<br>Serious Telephone Abuse<br>Threat to Government Officials<br>Violent Behavior<br>Prison Disturbance<br>Serious Escape | **Minimum**<br>Low<br>Low<br>Low<br>Low<br>Low<br>High<br>High<br>High |
| **11 - 21** | **No Public Safety Factors**<br>Violent Behavior<br>Prison Disturbance<br>Serious Escape | **Low**<br>High<br>High<br>High |
| **22 +** | | **High** |

### MANAGEMENT VARIABLES

Management Variables are applied to reflect and support the
professional judgment of Bureau staff in order to ensure
placement in the most appropriate security level institution.
They are required when placement has been made and/or maintained
at an institution level inconsistent with the inmate's scored
security level.  Application of a Management Variable requires
review and approval by the Regional Director or designee.  When
completing the BP-338, institution staff may only enter a
Management Variable which the Designator previously approved and
entered as a management reason.  Otherwise, the Designator or
designee is the only person authorized to enter a variable.  A
maximum of three Management Variables may be entered for each
case.

**Note:**  SENTRY will not permit the simultaneous application of the
Greater Security and Lesser Security MGTVs.

When a Management Variable no longer applies, institution staff
shall remove the variable(s) accordingly.  When no Management
Variable is required, institution staff shall insert the letter
"A" (NONE) in the space to signify that no MGTV(s) apply.
Management Variables entered at initial designation are
automatically transferred onto the BP-338, Custody Classification
form.

**Request for Management Variable/Management Variable expiration
date.**  All requests to apply a Management Variable (MGTV) or to
update the Management Variable Expiration Date (MVED) must be
submitted to the appropriate Designator via GroupWise using form
EMS 409.  (Individual Regional Offices may request additional
information.)  Requests for Management Variables on WITSEC
inmates are to be forwarded to the Inmate Monitoring Section in
the Central Office.  The following criteria shall be utilized:

   a.  Only Regional, CCM, or Central Office staff can apply a
MGTV and update a MVED, with the exception of "I" (Med/Psych),
which shall be applied and reviewed by the Central Office Medical
Designator and "U" (Mariel Cuban Detainee), which shall be
applied by the Community Corrections and Detention Division,
Central Office.

   b.  When requesting a MGTV or an updated MVED, **only** sections
one and six need to be addressed on the GroupWise form EMS 409.
This request should normally be made to the appropriate
Designator within 21 calendar days following the inmate's
scheduled program review to ensure the Designator is receiving a
current Custody Classification Form, BP-338.  After approval by

the Warden, the request may be routed from the unit terminal, and unit staff must enter a DST assignment using the Update Transaction. Staff will enter W MGTV as a DST assignment when the request is routed. The Regional Office staff will remove the assignment when the decision is made.

*   c.  When requesting an updated MVED, staff are to indicate the recommended expiration date on the top portion of form EMS 409.   *

  d.  When a case with the MGTV of "I" (Med/Psych) is scheduled for review and it is anticipated that this MGTV is no longer applicable, institution staff are to complete all sections of EMS 409 form and forward the request to the Central Office Medical Designator and the appropriate Regional Office. The Central Office Medical Designator will review the case for continuation or deletion of this MGTV. If this MGTV is no longer appropriate, the Central Office Medical Designator will remove the MGTV. After the Central Office Medical Designator removes the MGTV "I," the Regional Office is to review the case for transfer. If a transfer is not appropriate, another MGTV is to be applied.

Expiration dates are to be assigned in accordance with Table 7-3. The Regional Director, or designee, must evaluate the information on the EMS 409 form to determine the appropriate expiration date for all applicable Management Variables. At the established expiration date, case management staff are to review the current Management Variable(s) to determine appropriateness. In the rare instance when more than one MGTV is applied, all expiration dates will be displayed on the BP-338. When running a SENTRY roster, each MGTV and corresponding MVED will be displayed. Inmates housed in contract facilities are excluded from this review process.

**Management Security Level (MSL).** Upon application of any of the following Management Variables: PSF Waived; Greater Security; Lesser Security, the Designator is to apply an overriding Management Security Level (MSL) to reflect the inmate's assessed security needs. This MSL takes precedence over the security level reflected in SENTRY which is based upon the scored security level and the application of Public Safety Factors. Designation must be made to a DFCL commensurate with the inmate's security needs as reflected in the Management Security Level. **If there is an extenuating circumstance in which an inmate's designation facility is inconsistent with his or her MSL, at least one additional non-MSL MGTV must be added to support and explain the inconsistency.**

CODE        DESCRIPTION - MGTV

A           <u>**NONE**</u>.  No Management Variables apply.  Institution
            staff are permitted to enter this item.

B           <u>**JUDICIAL RECOMMENDATION**</u>.  A court may recommend a
            specific institution or program.  When consistent with
            Bureau of Prisons' policies or when such actions are
            consistent with sound correctional management, the
            Bureau of Prisons attempts to satisfy judicial
            recommendations.  When this is not feasible, the court
            is notified in writing with an explanation outlining
            the reasons for not satisfying that recommendation.
            **When the judicial recommendation is the deciding factor
            causing placement outside normal guidelines, this
            Management Variable shall apply.**

D           <u>**RELEASE RESIDENCE**</u>.  It is the practice of the Bureau of
            Prisons to attempt to place each inmate in an
            institution that is reasonably close to the anticipated
            release area.  Ordinarily, placement within 500 miles
            of the release area is to be considered reasonable,
            regardless of whether there may be an institution
            closer to the inmate's release area.  This Management
            Variable can also apply to inmates who are within 18-24
            months from release.  **This Management Variable shall
            apply when placement of the inmate in close proximity
            to the release residence is the determining factor in
            making the designation and causes placement outside
            normal guidelines.**

E           <u>**POPULATION MANAGEMENT**</u>.  Situations may occur in which
            an inmate requires housing in a facility which is not
            commensurate with his or her security level.  Following
            are example situations: facility activation; population
            pressures affecting available appropriate-level bed
            space within 500 miles of the inmate's anticipated
            release residence; gang/security concerns.  **When
            population management causes placement outside normal
            guidelines, this Management Variable shall apply.**

G           <u>**CENTRAL INMATE MONITORING ASSIGNMENT**</u>.  Pursuant to the
            CIM Program Statement, some inmates, for specified
            reasons, need to be monitored or separated from others.
            Sometimes these special management concerns limit the
            options for placement.  **When the CIM assignment causes**

**CODE**      **DESCRIPTION - MGTV**

         **placement outside normal guidelines, this Management
         Variable shall apply.**

**I**       **MEDICAL OR PSYCHIATRIC.** An inmate who has a history of
         or is presently exhibiting psychiatric problems may
         need an initial designation to a psychiatric referral
         center. Similarly, documented information reflecting
         that the inmate may need medical or surgical treatment
         may require a designation to a medical referral center.
         Designations and redesignations of these inmates shall
         be made by the Central Office Medical Designator. **When
         the need for medical/psychiatric treatment causes
         placement outside normal guidelines, this Management
         Variable shall apply.**

**N**       **PROGRAM PARTICIPATION.** Occasionally, inmates become
         involved in specialized programs which are only
         available on a limited basis, or at specific
         institutions; in such instances, it might be
         appropriate to delay transfer pending completion of the
         program. Likewise, an inmate's ability to participate
         in a unique program may require placement at an
         institution not commensurate with his or her security
         level. **Accordingly, when an inmate's security level
         changes during participation in a special program not
         likely to be available in another appropriate facility,
         causing placement outside normal guidelines, this
         Management Variable shall apply.**

**R**       **WORK CADRE.** At secure facilities without satellite
         camps, the Regional Director may authorize a certain
         number of work cadre inmates to perform work outside
         the perimeter of the institution. **In some cases,
         placement may be outside normal guidelines, and this
         Management Variable shall apply.**

**S**       **PSF WAIVED.** An inmate may receive up to three Public
         Safety Factors (PSFs). PSFs may be waived after review
         and approval by the Regional Director or designee.
         **When Public Safety Factors are waived causing placement
         outside normal guidelines, this Management Variable
         shall apply.** Application of this MGTV mandates that
         the Regional Director determine the most appropriate
         level of security required by the inmate and apply a
         Management Security Level (MSL). The MSL must be at

**CODE**          **DESCRIPTION - MGTV**

least one level less than the scored security level
which is based on the Security Total and Public Safety
Factor(s).

U          **MARIEL CUBAN DETAINEE**.  Mariel Cuban Detainees are
given an initial custody and security level.  However,
Custody Classification Forms are not completed on
Mariel Detainees due to the unavailability of certain
data at designation (i.e., current term of
confinement, length of time remaining to serve,
accurate criminal history).  Therefore, transfers for
positive or negative behavior may cause placement of a
Mariel Detainee in a facility different from his or her
initial security or custody level.

**This Management Variable shall be applied by the
Community Corrections and Detention Division, Central
Office.**

**Mariel Cuban Detainees whose security or custody level
does not match that of their facility will have this
Management Variable applied.**  Sentenced Mariel Cuban
inmates will <u>only</u> have this Management Variable added
if they are ordered detained upon expiration of their
federal sentences and their security or custody level
does not match that of their facility.

V          **GREATER SECURITY**.  There may be security concerns which
are not adequately reflected in the classification
scheme.  **In circumstances where an inmate represents a
greater security risk (i.e., pending charges, detainer,
escape risk but no DHO finding, etc.) than their
assigned security level, they may be placed in an
institution outside normal guidelines, and this
Management Variable shall apply.**  When this MGTV is
applied based on institutional behavior which is **not**
supported by a UDC/DHO finding of guilt, staff shall
ensure compliance with the criteria as set forth in the
Program Statement on Inmate Discipline and Special
Housing Units.  Application of this MGTV mandates the
Regional Director or designee to determine the most
appropriate level of security required by the inmate
and apply a Management Security Level (MSL).
Designation shall then be made to a DFCL commensurate
with the inmate's Management Security Level.  The MSL

| CODE | DESCRIPTION - MGTV |
|------|--------------------|
|      | must be at least one level greater than the scored security level which is based on the Security Total and Public Safety Factor(s). |
| **W** | **LESSER SECURITY**.  There may be security concerns which are not adequately reflected in the classification scheme.  **In circumstances where an inmate represents a lesser security risk (i.e., detainer removed, positive adjustment, etc.) than their assigned security level, the inmate may be placed in an institution outside normal guidelines, and this Management Variable shall apply.**  Application of this MGTV mandates the Regional Director or designee to determine the most appropriate level of security required by the inmate and apply a Management Security Level (MSL).  The MSL must be at least one level less than the scored security level which is based on the Security Total and Public Safety Factor(s). |

### DISCONTINUED MANAGEMENT VARIABLES

| | |
|--|--|
| **C** | Age |
| **F** | Racial Balance |
| **H** | Voluntary Surrender |
| **J** | Custody |
| **K** | Detainer |
| **L** | Discipline |
| **M** | Grandfather Clause |
| **O** | Security |
| **P** | Sentence Limitation |
| **Q** | Sliding Scale |

**Table 7-3**

| MANAGEMENT VARIABLE EXPIRATION TABLE | | |
|---|---|---|
| CODE | DESCRIPTION | LENGTH |
| A | None | N/A |
| B | Judicial Recommendation | N/A |
| D | Release Residence/Planning | N/A |
| E | Population Management | Up to 18 months** |
| G | Central Inmate Monitoring Assignment | N/A |
| I | Medical/Psychiatric | 6 months |
| N | Program Participation | Up to 18 months, at the discretion of the Regional Director** |
| R | Work Cadre | N/A |
| S | PSF Waived* | N/A (However, if an inmate is transferred to a more secure institution based on behavior related to the waived PSF, this MGTV shall be removed.) |
| U | Mariel Cuban Detainee | N/A |
| V | Greater Security* | At the discretion of the Regional Director upon recommendation from institution staff (can be extended indefinitely)*** |
| W | Lesser Security* | N/A |

* = requires application of a Management Security Level (MSL)

** = if no expiration date is entered, SENTRY will default to an expiration date 12 months in advance

*** = any valid SENTRY date may be entered; if no date is entered, SENTRY will default to N/A

```
CUSTODY CLASSIFICATION FORM INSTRUCTIONS - MALE (BP-338)
```

### INTRODUCTION

Custody classification is a procedure whereby inmates are assigned levels according to their criminal histories and institutional behavior/adjustment.  An inmate's custody level is an indication of how much staff supervision is required for an inmate within and beyond the confines of the institution.

An inmate's initial custody classification shall be scored at the first program review following initial classification (approximately 7 months after arrival at an institution). Subsequent reviews shall occur at least every 12 months, but may be conducted earlier in order to enable progress toward community activities.  Custody classification shall ordinarily occur in conjunction with every second program review.

Ordinarily, an inmate's security level and custody level shall be reviewed following any new sentence or sentence reduction, or any time a change in external factors or disciplinary action might affect the security or custody level.

When transferring to another institution, inmates normally retain their custody assignments.  If the custody level is inconsistent with that authorized at the receiving institution, the sending institution shall change the inmate's custody prior to transfer. Holdovers shall retain their custody level assignments until received at the designated institution.

At each annual custody review, a new Custody Classification Form shall be completed, even though the scoring elements may not have changed from the previous form.  Only the most current Custody Classification Form shall be retained in the Inmate Central File, except for those forms that must be retained to document appropriate review and approval for custody reductions (e.g., custody reductions for exception cases require the Warden, or designee, to sign the Custody Classification Form.  The form should be maintained to document the review and approval).  As set forth in the definition of maximum custody, Chapter 2, a BP-338 form changing custody to or from maximum custody must be permanently maintained.

It should be clearly understood that the Custody Classification Form only recommends an inmate's custody.  The unit team and/or Warden is the final review authority.  The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines.  Custody changes are not dictated by the point total.  However, when the unit team decides not to follow the recommendation of the point total, they must

document the reason(s) for this decision in writing on the
custody review form, and inform the inmate.

### SECTION A - IDENTIFYING DATA

1.  **INSTITUTION CODE.**  (Automatically displayed by SENTRY.)

2.  **UNIT.** (Automatically displayed by SENTRY.)

3.  **DATE.** (Automatically displayed by SENTRY.)

4.  **NAME.** (Automatically displayed by SENTRY.)

5.  **REGISTER NUMBER.** (Automatically displayed by SENTRY.)

6.  **CRIMINAL HISTORY POINTS.**  If points were entered on the
BP-337, they should transfer over to the BP-338, if the item is
blank, a manual entry must be made.  Record the criminal history
points as identified in the Criminal History Computation section
of the PSI.  (**This is not to be confused with Criminal History
Category, Base Offense Level, or Total Offense Level.**)  Enter the
number, including zero, indicated by the Probation Officer.  If
no criminal history points are provided by the USPO, enter
unknown (UNK) in the space provided.  This is not a scored item
affecting the inmate's security or custody score.  It is
information which the Bureau's Office of Research and Evaluation
will track and analyze.

7.  **MANAGEMENT VARIABLES.**  See Chapter 7, pages 9-15.

8.  **PUBLIC SAFETY FACTORS.** See Chapter 7, pages 1-8.

### SECTION B - BASE SCORING

1.  **TYPE OF DETAINER.**  Enter the appropriate number of points in
the box in the right-hand column to reflect detainer status.
Refer to the Offense Severity Scale (Appendix B).  If multiple
detainers have been filed, enter the point value for the most
serious charge.  Frequency and sentence length are not
considered.

The scoring of detainers on the Update Security Designation
(BP-337) may differ from the score received on the Custody
Classification Form (BP-338).  If there is a pending charge,
points based on the documented behavior are assigned on the type
of detainer item; if the pending charge involves a probation
violation, use the most severe documented behavior in the
original offense as the basis for assigning points in the

detainer scoring.  At the next scheduled custody review after the
initial BP-338 (18-19 months) is prepared and at subsequent
reviews, only formally filed detainers are considered on the
Custody Classification Form.  Score consecutive state sentences,
lodged state detainers and/or state parole violation
* terms/warrants as detainers.  Inmates should be informed that it
is vitally important that all pending charges and detainers be
resolved as quickly as possible so that institution programming
and release planning can occur.                                    *

a.  Score a concurrent **state** sentence, as a detainer only if it
is expected that the state sentence shall exceed the federal
sentence and the state has formally filed a detainer.  Other
formally filed state pending charges, consecutive sentences,
and/or parole violation term/warrants shall be scored as
* detainers.  Points will be assigned the same as they would be for
a federal violation (see pages 4 and 5 of this Chapter for
further instructions).                                             *

b.  **No points shall be awarded for U.S. Parole Commission
warrants (adjudicated or unadjudicated).**  However, original
offense behavior shall be scored as a prior and the violation
behavior (including new offense behavior) shall be scored as the
current offense.

c.  No points shall be assigned for INS detainers.  However, each
case shall be carefully reviewed to determine whether the PSF for
Deportable Alien is applicable.

d.  If the formally filed detainer involves a **probation**
violation, use the most severe documented behavior in the
**original offense** as the basis for assigning points in the
detainer scoring chart below.

**Table 8-1**

| TYPE OF DETAINER | |
|---|---|
| POINTS | DETAINER OFFENSE LEVEL |
| 0 | None/Deportation |
| 1 | Lowest and Low Moderate Severity |
| 3 | Moderate Severity |
| 5 | High Severity |
| 7 | Greatest Severity |

2.  **SEVERITY OF CURRENT OFFENSE.**  Enter the appropriate number of
points in the box at the right-hand column to reflect the most
severe documented instant offense **behavior.**  For multiple
offenses, the highest score will be used in scoring the current

offense.  Staff shall consider the offense behavior of all
sentences, including federal sentences that have a future
beginning date or a *prior* state or D.C. sentence if there was no
**physical** release from custody.

Severity is determined by using the Offense Severity Scale
(Appendix B).  Do not use this information to assign points on
the "history" items (numbers 5 and 6 on the Custody
Classification Form).

**In determining "Severity of Current Offense" staff shall review
the <u>Statement of Reasons</u>, if provided, (attachment to the
Judgment) and ensure the information provided is appropriately
used in classifying the inmate.**

**Table 8-2**

| SEVERITY OF CURRENT OFFENSE | |
|---|---|
| POINTS | SEVERITY |
| 0 | Lowest Severity |
| 1 | Low Moderate Severity |
| 3 | Moderate Severity |
| 5 | High Severity |
| 7 | Greatest Severity |

**Example:**  According to the PSI, the individual was involved in an
Assault With Serious Injury (Greatest severity level) but pled
guilty to a Simple Assault (Moderate severity level).  Assign the
points on the basis of the more severe documented behavior, i.e.,
assign 7 points (Greatest severity level).  Do not use the
current term of confinement information to assign points on the
"history" items (numbers 10 and 11 on the Security Designation
Data section of the BP-337).

### PROCEDURES FOR PAROLE, MANDATORY RELEASE, SPECIAL PAROLE TERM, OR SUPERVISED RELEASE VIOLATOR

   a.  If the violation was the result of new criminal conduct,
regardless of conviction status, use the new criminal conduct for
scoring "Severity of Current Offense" (see Appendix B - Offense
Severity Scale).  If the violation behavior was a technical
violation, score the "Severity of Current Offense" as low
moderate.

b.  The original offense behavior which occurred prior to the violation is considered past behavior and is not used in determining "Severity of Current Offense."

## PROCEDURES FOR PROBATION VIOLATOR

a.  The original offense behavior that resulted in probation should be used for scoring "Severity of Current Offense" (see Appendix B - Offense Severity Scale).

b.  However, if the new criminal conduct (violation behavior) is more severe than the original offense behavior, then use this behavior for scoring "Severity of Current Offense." **THE MOST SEVERE DOCUMENTED BEHAVIOR BETWEEN THE ORIGINAL OFFENSE AND THE VIOLATION BEHAVIOR IS TO BE USED FOR SCORING "SEVERITY OF CURRENT OFFENSE."**

3.  **MONTHS TO RELEASE DATE.**  If there a current and valid Sentence Computation in SENTRY, SENTRY will automatically enter the number of months remaining into this field.  This item does not affect the inmate's security or custody score.  If however, there is not a complete Sentence Computation/Projected Release Date in SENTRY, this entry must be manually computed.  An entry in this field prompts the Sentence Length PSF.

4. **TYPE OF PRIOR COMMITMENTS.**  In the right-hand column, enter the appropriate number of points reflecting the category of **prior commitment** history.  This is determined by **prior institution incarceration** and is based on the most severe offense behavior (using the Offense Severity Scale, Appendix B) which resulted in commitment.  If an inmate is currently serving concurrent and/or consecutive sentences, whether they are federal, D.C., state, or local, none of the other sentences are to be scored as priors until there has been a break in service, i.e., **physical** release.  Review the definition and examples in Chapter 2 for further instruction.  Commitment is defined as any term for which the individual has been confined and is scored as follows:

- ●  Minor = Lowest or Low Moderate

- ●  Serious = Moderate, High, or Greatest

Documented information from juvenile or YCA adjudications can be used, unless the record has been expunged or vacated.

**Table 8-3**

| TYPE OF PRIOR COMMITMENTS | |
|---|---|
| POINTS | TYPE |
| 0 | None |
| 1 | Minor |
| 3 | Serious |

**Example:**  If an inmate has a previous incarceration for a crime which falls in the High category on the Offense Severity Scale (Appendix B), the incarceration would be considered "Serious" and would be scored 3 points in the box in the right-hand column.

5.  **HISTORY OF ESCAPE OR ATTEMPTS.**  Enter the appropriate number of points in the right-hand column to reflect the escape history of the individual **considering only those acts for which there are documented findings of guilt** (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation).  Escape history includes the individual's entire background of escapes or attempts to escape from confinement, or absconding from community supervision, **excluding the current term of confinement;**

    **(\*\*EXCEPTION:**  Any institution disciplinary hearing (UDC or DHO) finding of commission of a prohibited act committed during the current term of confinement is to be scored as a history item.\*\*)

**State disciplinary findings are to be scored unless** there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate.

Failure to Appear for misdemeanor traffic (automobile) violations, and runaways from foster homes are not to be scored. However, Failure to Appear for or Flight to Avoid Prosecution for serious offenses involving the operation of an automobile, such as Vehicular Homicide or Leaving the Scene of an Accident that resulted in serious bodily harm shall be counted **when there is a documented finding of guilt.**

In determining time frames, use the date of the documented occurrence.  Documented information from juvenile or YCA adjudications can be used unless the record has been expunged or vacated.

**Table 8-4**

| HISTORY OF ESCAPE OR ATTEMPTS | | |
|---|---|---|
| POINTS | HISTORY | DEFINITION |
| 0 | None | No history of escape |
| 1 | > 10 Minor | An escape from an open institution or program (e.g., minimum security facility, CCC, furlough) not involving any actual or threat of violence.  Also includes military AWOL, Bail Reform Act, Flight to Avoid Prosecution, and Absconding from Community Supervision.  **There must be a finding of guilt.** |
| 2 | 5 - 10 Minor | |
| 3 | <   5 Minor | |
| S * | Any Serious Escape Regardless of time period | An escape from secure custody with or without threat of violence.  Also includes escapes from an open facility or program with actual threat of violence.  **There must be a finding of guilt.**  * S = 3 pts. and requires application of PSF (L) |

**Example:**  An inmate was sentenced for Failure to Appear while on bail for the current offense.  The individual was also found guilty for escape from a county jail six years ago by sawing through the bars.  Exclude Failure to Appear because it is a part of the current offense.  Include escape from county jail (serious) = 3 points.  Enter S in the box in the right-hand column and add the Serious Escape PSF.

6.  **HISTORY OF VIOLENCE.**  Enter the appropriate number of points in the right-hand column to reflect any history of violence, **considering only those acts for which there are documented findings of guilt** (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation).  This item includes the individual's entire background of criminal violence, **excluding the current term of confinement;**

> **(**EXCEPTION: Any institution disciplinary hearing (UDC or DHO) finding of commission of a prohibited act committed during the current term of confinement is to be scored as a history item.**)**

**State disciplinary findings are to be scored unless** there is documentation that the state disciplinary proceedings did not afford due process protection to the inmate

Severity of violence is defined according to the offense behavior which resulted in a **conviction or finding of guilt.** History of Violence points combine both seriousness and recency of prior violent incidents to measure risk for violent behavior, where more points mean greater risk. Therefore, if there is more than one incident of violence, score the combination of seriousness and recency that yields the highest point score. Prior periods * of incarceration will be considered a "history" item if the inmate was **physically** released from custody and then returned to serve either a violation or a new sentence. In determining time frames, use the date of the documented behavior. Documented information from juvenile or YCA adjudication can be used unless the record has been expunged or vacated.

**Table 8-5**

| HISTORY OF VIOLENCE | | |
|---|---|---|
| POINTS | YEARS | DEFINITION |
| 0 | None | No history of violence |
| 1 | > 10 Minor | Aggressive or intimidating behavior which **is not** likely to cause serious bodily harm or death (e.g., simple assault, fights, domestic disputes, etc.) **There must be a finding of guilt.** |
| 3 | 5 - 10 Minor | |
| 5 | < 5 Minor | |
| 2 | > 15 Serious | Aggressive or intimidating behavior which **is** likely to cause serious bodily harm or death (e.g., aggravated assault, domestic violence, intimidation involving a weapon, incidents involving arson or explosives, rape, etc.). **There must be a finding of guilt.** |
| 4 | 10 - 15 Serious | |
| 6 | 5 - 10 Serious | |
| 7 | < 5 Serious | |

**Example:** If an offender was found guilty of homicide 20 years ago and a simple assault 3 years ago, assign 5 points for the simple assault. Or in another case, the offender had guilty findings for homicide 12 years ago; aggravated assault 8 years ago; and fighting 2 years ago, score 6 points for the aggravated assault 8 years ago.

**Note:  Attempted suicide, self-mutilation and possession of weapons are not applicable behaviors for History of Violence scoring.  In addition, verbal threats (such as Code 203-Threatening Bodily Harm) are to be viewed as minor violence.**

7.  **PRECOMMITMENT STATUS.**  This item refers to the inmate's status preceding, during, and following trial.  Enter the appropriate number in the right hand column. Note that this number is subtracted from the total of the preceding items.

**Table 8-6**

| POINTS | STATUS | DEFINITION |
|--------|--------|------------|
| PRECOMMITMENT STATUS | | |
| **0** | Not Applicable | Inmate was not released on Own Recognizance (OR) and did not voluntarily surrender. |
| **R** (-3) | Own Recognizance | <u>Award credit for the following</u>: Inmate was released prior to or during the trial period without posting bail or incurring any financial or other type of obligation to ensure appearance. |
| **V** (-3) | Voluntary Surrender | Inmate was not escorted by a law enforcement officer to either the U.S. Marshals office or the place of confinement.<br><br>　　　This applies only to **post-sentencing** voluntary surrender, and does not include cases where the inmate surrendered to the U.S. Marshals on the same day as sentencing.<br><br><u>Do not award credit for the following</u>: If there is any indication of bail violation, failure to appear, etc.<br><br>If inmate violated or did not successfully complete release period<br><br>Electronic Monitoring cases or pretrial CCC (bond) placement<br><br>Military inmates who were not confined, but were restricted in movement on the military reservation |

8. **BASE SCORE.** Enter the numerical result of the subtraction of Item 7 (Pre-commitment Status) from Items 1 - 6. If Item 7 is greater than the total of Items 1 - 6, enter zero in the box in the right-hand column.

### SECTION C - CUSTODY SCORING

\* 1. **PERCENTAGE OF TIME SERVED.** Enter in the right-hand column \* the number of points that reflects the percentage of time the inmate has already served on the present commitment at the time of the review. To determine the percent, divide the number of months already served on the present sentence by the number of months of incarceration the inmate will have served upon reaching his projected release date. If applicable, give credit for jail time.

**Table 8-7**

| PERCENTAGE OF TIME SERVED | |
|---|---|
| POINTS | PERCENTAGE OF TIME SERVED |
| 3 | 0 through 25 percent |
| 4 | 26 through 75 percent |
| 5 | 76 through 90 percent |
| 6 | 91 plus percent |

**Example:** An inmate has served 15 months (14 months at the institution, plus credit for one month jail time) of an anticipated total of 78 months of confinement.

$$\frac{\text{Actual Time Served}}{\text{Anticipated Time in confinement}} = \frac{15}{78} = 19.2\%$$

Enter "3" in the box in the right-hand column, since 3 represents a range of 0 to 25%.

2. **DRUG/ALCOHOL ABUSE.** Enter in the right-hand column the appropriate number of points reflecting drug or alcohol abuse.

**Table 8-8**

| DRUG/ALCOHOL ABUSE | |
|---|---|
| POINTS | ABUSE |
| 2 | Within the past 5 years (including this incarceration) |
| 3 | More than 5 years ago (including this incarceration) |
| 4 | Never or occasional legal use |

**Example:** 1.    An inmate was found guilty by the UDC or DHO of being intoxicated two years ago.  Enter 2 in the right-hand column.

2.    An inmate was convicted of Drug Trafficking one year ago.  His PSI reflects no history of drug use, but an enjoyment of social drinking on a periodic basis.  Enter 4 in the right-hand column.

3.    An inmate was convicted of Drug Trafficking one year ago.  The inmate admits to periodic and social use of marijuana 10 years ago.  Enter 3 in the right-hand column.

4.    The inmate was convicted of Drug Trafficking.  He has no illegal substance abuse history (including no excessive use of alcohol).  Enter 4 in the right-hand column.

3.    **MENTAL/PSYCHOLOGICAL STABILITY.**  Enter the appropriate number of points in the right hand column reflecting the inmate's mental health status.  This is based on the Psychology Services Screening Report regarding the inmate's degree of mental stability.  The conclusion should be clearly stated in the report and is to be interpreted in light of whether or not the inmate is appropriate for a lower custody/security status.

**Table 8-9**

| MENTAL/PSYCHOLOGICAL STABILITY | |
|---|---|
| POINTS | STABILITY |
| 2 | Unfavorable |
| 4 | No referral or favorable report |

If an inmate's most current Psychology Services Screening report is both "unfavorable" and over one year old, an updated report must be provided before the custody review.  If the report is "favorable" and over one year old, an updated report may or may not be requested at the team's option; if it is less than one year old, an updated report need not be requested.  Psychiatric and/or Psychological reports shall be appropriately identified to avoid any possible misinterpretation.

An "unfavorable report" means that the most current report contains a finding that the individual shows evidence of serious mental instability.  A "favorable report" means that no finding of serious mental instability was made in the most recent report. "No referral" means the case was not referred for evaluation.

**Example:**  In the past year, an inmate has not been referred for a psychological/psychiatric evaluation.  Therefore, "4" is entered in the right-hand column.

4.  **TYPE AND NUMBER OF MOST SERIOUS INCIDENT REPORT(S)**.  Enter the points which reflect the most serious disciplinary report(s). This is determined by using the Institution Disciplinary Codes and Sanctions Severity Scale.  Points are assigned based on the most severe disciplinary report(s) for which the inmate has been found guilty by either the Unit Disciplinary Committee (UDC) or the Discipline Hearing Officer (DHO), within the specified time frames.  Points are to be assigned only for the current period of incarceration and in accordance with the following table:

**Table 8-10**

| TYPE AND NUMBER OF MOST SERIOUS INCIDENT REPORT(S) | |
|---|---|
| POINTS | TYPE AND NUMBER OF MOST SERIOUS REPORTS |
| 0 | Any GREATEST severity (100) within past ten years |
| 1 | More than one HIGH severity (200) within two years |
| 2(a) | Only one HIGH severity (200) within past two years |
| 2(b) | More than one MODERATE severity (300) within the past year |
| 3(a) | Only one MODERATE severity (300) within the past year |
| 3(b) | More than one LOW MODERATE severity (400) within the past year |
| 4 | Only one LOW MODERATE severity (400) within the past year |
| 5 | None |

**Example (1).**  If an inmate has been found guilty of three HIGH
severity incident reports within the past two years, he would
receive a score of "1."  If the inmate has only received one HIGH
severity incident report within the past two years, the inmate
would receive a score of "2(a)."

**Note:**  Greatest severity incident reports merit a score of "0"
regardless of the total number received in the last ten years.

The letter characters assigned to numerical scores 2 and 3 are
merely used to differentiate between these items which have
identical numerical values. The letter character is not used for
computation.

**Note:**  For supervised release, mandatory release, and parole
violators, incident reports received during a previous period of
confinement should be used, if they apply, for scoring "History
of Escape or Violence," and "Drug/Alcohol Abuse."  However,
incident reports received during a previous period of confinement
shall not be counted when scoring "Type and Number of Most
Serious Incident Reports" and "Frequency of Most Serious Incident
Reports Within the Last Year" since this behavior occurred during
a previous period of confinement.  Only incident reports received
during the current supervised release and parole violator term
shall be counted in these categories.

5. **FREQUENCY OF DISCIPLINARY REPORTS.**  Enter the appropriate
number of points in the right-hand column that reflect the
frequency of disciplinary reports.

This is determined by assigning points based on the number of
disciplinary reports for which the inmate has been found guilty
by either the Unit Discipline Committee or the Discipline Hearing
Officer during the past 12 months.

**Table 8-11**

| FREQUENCY OF DISCIPLINARY REPORTS | |
|---|---|
| POINTS | FREQUENCY WITHIN THE PAST 12 MONTHS |
| 0 | Six plus reports |
| 1 | Two through five reports |
| 2 | One report |
| 3 | None |

6. **RESPONSIBILITY DEMONSTRATED.**  Enter the appropriate number of
points reflecting the inmate's demonstrated level of
responsibility during the past 12 months.  This is based on the
inmate's general demeanor as reflected in peer group associates,
degree of program involvement, level of dependability, and nature
of interaction with staff and other inmates.  Also considered for
this item is the degree of financial responsibility the inmate
has demonstrated in attempting to satisfy legitimate financial
obligations.

Do not use only the inmate's conduct record, though this should
be considered when evaluating the inmate's overall level of
responsibility.

**Table 8-12**

| RESPONSIBILITY DEMONSTRATED | |
|---|---|
| POINTS | RESPONSIBILITY LAST 12 MONTHS |
| 0 | Poor |
| 2 | Average |
| 4 | Good |

**Example:**  An inmate has received no incident reports, but has demonstrated constant cell sanitation problems, has not become involved in any institution programs, and has not demonstrated a positive attitude.  He should receive a score of "0" (poor).

**Note:  Inmates who refuse to participate in the Inmate Financial Responsibility Program or recommended Drug Education or Treatment Programs shall receive a score of "0" (poor).  Refusal  to participate in the Institution Release Preparation Program <u>alone</u> does not result in the inmate receiving a score of "0" (poor).**

7.  **FAMILY/COMMUNITY TIES.**  Enter the number of points in the right-hand column that reflects the level of family and community ties.  This is based on established and continuing family and community relationships that impact on the inmate's institutional adjustment.  Consider marital status or common-law relationship, family support, regularity of visits, correspondence, family stability in the community, and the stability of relationships that the inmate has with non-family members in the community.

**Table 8-13**

| FAMILY/COMMUNITY TIES | |
|---|---|
| POINTS | TYPE OF TIES |
| 3 | None or Minimal |
| 4 | Average or Good |

8.  **CUSTODY TOTAL.**  Add the points in items 1 through 7, Section B, and enter the sum in this block.

9.  **CUSTODY VARIANCE.**  The Custody Variance is a mathematical adjustment to an inmate's total security points.  The matrix below has a plus end (which adds points to the base score, thus raising the security level and increasing the custody) and a minus end (which subtracts points from the base score, thus lowering the security level and decreasing the custody).

As an inmate's adjustment improves within the institution, the higher his custody total and the longer an inmate is in the institution, the lower his base score becomes (his history is further in the past), therefore, lowering the inmate's security level and decreasing his custody.

If an inmate adjusts poorly to institution life, as well as poor adjustment to street life, then his base score will be high and his custody total will be low, which will add points to his base score thus increasing both his security level and custody.

**\*\*NOTE:  THE BASE SCORE TOTALS (0-6 POINTS, 7-9 POINTS, 10-13 POINTS, 14-22 POINTS, 23-27 POINTS) ON THE CUSTODY VARIANCE TABLE AS LISTED BELOW ARE NOT INTENDED TO COINCIDE WITH THE CLASSIFICATION SCORE AS OUTLINED IN THE SECURITY DESIGNATION TABLE.  THE CUSTODY VARIANCE TABLE IS A MATHEMATICAL SET OF RULES FOR GUIDANCE IN THE APPLICATION OF THE APPROPRIATE CUSTODY ASSIGNMENT.**

**Table 8-14**

| CUSTODY TOTAL (Section C, Item 8) | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CUSTODY VARIANCE | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| **B A S E**  0 - 6 points | +8 | +7 | +8 | +5 | +5 | +4 | +3 | +2 | +2 | +1 | 0 | 0 | 0 | -1 | -2 | -2 | -3 | -4 | -5 | -5 | -6 |
| 7 - 9 points | +8 | +7 | +8 | +5 | +5 | +4 | +3 | +2 | +2 | +1 | 0 | 0 | 0 | 0 | -1 | -2 | -2 | -3 | -4 | -5 | -5 |
| **S C O R E**  10-13 points | +8 | +7 | +8 | +5 | +5 | +4 | +3 | +2 | +2 | +1 | 0 | 0 | 0 | 0 | 0 | -1 | -2 | -2 | -3 | -4 | -5 |
| 14-22 points | +8 | +7 | +8 | +5 | +5 | +4 | +3 | +2 | +2 | +1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | -1 | -2 | -2 | -3 |
| 23-27 points | +8 | +7 | +6 | +5 | +5 | +4 | +3 | +2 | +2 | +1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | -1 | -2 | -2 |

**Example:**  An inmate has a Base Score of 14 points and a Custody Total of 16 points. By using  the Custody Variance Matrix, the intersecting point for these two items is +3.  Thus, +3 is the Custody Variance score that shall be entered on Item 9, Section C.

10.  **SECURITY TOTAL.**  Apply the Custody Variance Score to the Base Score, and enter the result on Item 10, Section C.

**Example:**  An inmate has a Base Score of 14 and a Custody Variance Score of +3.  By applying +3 to 14, a Security Total of 17 is obtained and entered on Item 10, Section C.

**Note:**  If the Custody Variance score is 0, the figure entered shall be exactly the same as the Base Score.  If the application of the Custody Variance to the Base Score results in a negative number, use 0.

11.  **SCORED SECURITY LEVEL.**  An inmate's Security Level is determined by the Security Total and any applicable Public Safety Factors (see Chapter 7).

12.  **MANAGEMENT SECURITY LEVEL (MSL).**  A Security Level which is entered by the Regional or Central Office upon application of any of the three MSL management variables (PSF Waived, Greater Security, Lesser Security).  The MSL overrides the inmate's scored security level.  If there was a previously entered MSL, it will automatically appear in this position.

13.  **CUSTODY CHANGE CONSIDERATION.**  To determine eligibility for a custody change, the following procedures apply:

●  If the Custody Variance Score (Section C, Item 9) is in the plus (+) range, consider a custody increase.

●  If the Custody Variance Score (Section B, Item 9) is 0, the inmate's present custody is continued.

●  If the Custody Variance Score (Section B, Item 9) is in the minus (-) range, consider a custody decrease.

### SECTION D - INSTITUTION ACTION

1.  **TYPE OF REVIEW.**  R = Regular or E = Exception

For regular cases, the unit team has authority to make custody assignments, and the Unit Manager is the signature authority on the BP-338.  For exception cases, the Warden or designee is the approving official and retains signature authority for the BP-338 whenever there is a change in custody.  An inmate should be handled as an exception case if there is documentation of the following:

●  **Public Safety Factors:**  Any inmate with a PSF.  If the PSF has been waived the case is still considered an exception.

●  **Central Inmate Monitoring Assignment:**  An inmate with a CIM assignment, excluding state prisoners and separation cases.

●  **Other:**  The Warden may specify in writing other offenses or cases that require exception review.

\*    Unit staff will indicate on the BP-338 form the reason for the exception case.  If the Warden disagrees with the form, he/she will indicate the reasons on the 338 form.                              \*

2.  **CURRENT CUSTODY.**  Check the proper code for the inmate's current custody:

        MAX = MAXIMUM, IN = IN, OUT = OUT, COM = COMMUNITY

3. **NEW CUSTODY**.  Check the proper code for the inmate's new
custody:

MAX = MAXIMUM, IN = IN, OUT = OUT, COM = COMMUNITY

As indicated below, the Custody Classification Form only
recommends; the final decision rests with the review authority.
With the exceptions noted previously in Item 1, Type of Review,
the Unit team has the following options:

**Table 8-15**

| BP-338 FORM RECOMMENDS | CLASSIFICATION TEAM OPTIONS |
|---|---|
| Custody Increase (+) range | Increase custody one level<br>or<br>Continue same custody assignment and document why |
| Custody Decrease (-) range | Decrease custody one level<br>or<br>Continue same custody assignment and document why |
| Continue Present Custody | Continue same custody assignment<br>or<br>Refer to the Warden (see below) |

The custody level should normally be reduced or increased by only
one level (i.e., a reduction of IN would be to OUT, not to
COMMUNITY; an increase from COMMUNITY would be to OUT, not to
IN).  However, an exception regarding increases can be made for
disciplinary cases involving prohibited acts of the Greatest
Severity or escape, provided it is justified by the Unit team in
a memo to the inmate's central file with a copy to the inmate.

Additionally, transfer to a CCC may require the custody level to
be decreased more than one level.  If the inmate is receiving a
custody reduction solely for the purpose of transferring to a
CCC, a new Custody Classification Form (BP-338) does not need to
be completed.  Approval for a decrease to COMMUNITY custody is
granted by virtue of the Warden's approval and signature on the
Institution Referral for CCC Placement (BP-210).

While it is mandatory that community custody be effected at the
time of transfer, it may not be appropriate to reduce the
inmate's custody level prior to the date of transfer (e.g., it
would not be appropriate for an IN custody inmate at a MEDIUM
security level institution to have COMMUNITY custody while still
housed at the institution).  In such cases, upon receipt of a CCC
acceptance date, a SENTRY future assignment would be established
for the date of transfer.  The effective time for the reduction
would be 12:01 AM.  An inmate must be assigned COMMUNITY custody

status **prior** to transfer to a CCC.  Unit staff will state the current custody status of the inmate if other than COMMUNITY on the Transfer Order in the Custody Classification section.  Next to the current custody, unit staff will type "COMMUNITY custody effective _____."  (insert date the Warden deems appropriate).

If the Custody Variance (Section B, Item 9) is zero (Continue Present Custody), and the unit team believes that there is a compelling reason to change the inmate's custody, the unit team shall refer the case to the Warden, who is the deciding official.

4.  **ACTION.**  For exception cases only, the Warden or designee should check the appropriate box indicating either approval or disapproval of the unit team's decision.  For regular cases, the unit team will take this action.

5.  **DATE OF NEXT REVIEW.**  Enter the month and year of the next scheduled review.

6.  **CHAIRPERSON.**  The Unit Manager shall print his or her name and sign the form in the space provided.

7.  **WARDEN OR DESIGNEE.**  This item is reserved for the Warden or designee's printed name and signature if the inmate is an exception case as defined in Item 1 of this section.  If the Warden or designee disapproves, the reason shall be documented on the Custody Classification Form (BP-338) and a copy provided to the inmate.

8.  **SUMMARY OF FINAL ACTION.**  After all action is complete (exception cases signed off, etc.,) the final outcome shall be entered.  Upon completion, the form is to be filed in the Inmate Central File, Section 2, and the appropriate custody assignment updated in SENTRY.

| CUSTODY CLASSIFICATION FORM - MALE (BP-338) |
|---|

| **A. IDENTIFYING DATA** | 1. INSTITUTION CODE | 2. UNIT | 3. DATE |
|---|---|---|---|
| 4. NAME | | 5. REGISTER NUMBER | |

6. CRIMINAL HISTORY POINTS _____

7. MANAGEMENT   A - NONE                          I - MED/PSYCH TREATMENT      V - GREATER
   VARIABLES    B - JUDICIAL RECOMMENDATION       N - PROGRAM PARTICIPATION         SECURITY
                D - RELEASE RESIDENCE/PLANNING     R - WORK CADRE               W - LESSER
                E - POPULATION MANAGEMENT          S - PSF WAIVED                    SECURITY
                G - CIMS                           U - MARIEL CUBAN

8. PUBLIC       A - NONE                 F - SEX OFFENDER           L - SERIOUS ESCAPE
   SAFETY       B - DISRUPTIVE GROUP     G - THREAT GOVT OFFICIAL   M - PRISON DISTURBANCE
   FACTORS      C - GREATEST             H - DEPORTABLE ALIEN       N - JUVENILE VIOLENCE
                    SEVERITY OFFENSE     I - SENTENCE LENGTH        O - SERIOUS TELEPHONE
                                                                       ABUSE              *

**B. BASE SCORING** ////////////////////////////////////////////////////////////////////////

1. TYPE OF DETAINER 0 = NONE 1 = LOWEST/LOW MODERATE 3 = MODERATE 5 = HIGH 7 = GREATEST

2. SEVERITY OF CURRENT   0 - LOWEST              3 - MODERATE       7 - GREATEST
   OFFENSE               1 - LOW MODERATE        5 - HIGH

3. MONTHS TO RELEASE _____

4. TYPE OF PRIOR COMMITMENT          0 - NONE          1 - MINOR      3 - SERIOUS

| 5. HISTORY OF ESCAPE |        | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS |
|---|---|---|---|---|---|---|
| OR ATTEMPTS | MINOR | 0 | 1 | 1 | 2 | 3 |
| | SERIOUS | 0 | 3(S) | 3(S) | 3(S) | 3(S) |

| 6. HISTORY OF |        | NONE | >15 YEARS | 10-15 YEARS | 5-10 YEARS | <5 YEARS |
|---|---|---|---|---|---|---|
| VIOLENCE | MINOR | 0 | 1 | 1 | 3 | 5 |
| | SERIOUS | 0 | 2 | 4 | 6 | 7 |

7. PRECOMMITMENT STATUS 0=NOT APPLICABLE -3(R)=OWN RECOGNIZANCE -3(V)=VOLUNTARY SURRENDER

8. BASE SCORE

**C. CUSTODY SCORING** ///////////////////////////////////////////////////////////////////////

1. PERCENTAGE OF TIME SERVED    3 = 0-25%    4 = 26-75%    5 = 76-90%    6 = 91+%

2. DRUG/ALCOHOL ABUSE      2 = WITHIN PAST 5 YEARS   3 = MORE THAN 5 YEARS AGO   4 = NEVER

3. MENTAL/PSYCHOLOGICAL STABILITY      2 = UNFAVORABLE      4 = NO REFERRAL OR FAVORABLE

4. TYPE & NO    0=ANY GREAT (100) IN PAST 10 YR      1=MORE THAN 1 HIGH (200 IN PAST 2 YR
   OF MOST     2A=ONLY 1 HIGH (200) IN PAST 2 YR    2B=MORE THAN 1 MOD (300) IN LAST YR
   SERIOUS     3A=ONLY 1 MOD (300) IN PAST YR       3B=MORE THAN 1 LOW MOD (400) IN PAST YR
   INCIDENT RPT 4=ONLY 1 LOW MOD (400) IN LAST YR    5= NONE

5. FREQUENCY OF DISCIPLINARY REPORTS (IN PAST YEAR) 0 = 6+ 1 = 2 THRU 5   2 = ONE   3 = NONE

6. RESPONSIBILITY DEMONSTRATED     0 = POOR    2 = AVERAGE    4 = GOOD

7. FAMILY/COMMUNITY TIES        3 = NONE OR MINIMAL        4 = AVERAGE OR GOOD

8. CUSTODY TOTAL

9. CUSTODY VARIANCE          CUSTODY TOTAL (SECTION C, ITEM 8)

| | | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B A S E | 0 - 6 PTS | +8 | +7 | +6 | +5 | +5 | +4 | +3 | +2 | +2 | +1 | 0 | 0 | 0 | -1 | -2 | -2 | -3 | -4 | -5 | -5 | -6 |
| | 7 - 9 PTS | +8 | +7 | +6 | +5 | +5 | +4 | +3 | +2 | +2 | +1 | 0 | 0 | 0 | 0 | -1 | -2 | -2 | -3 | -4 | -5 | -5 |
| S C O R E | 10-13 PTS | +8 | +7 | +6 | +5 | +5 | +4 | +3 | +2 | +1 | 0 | 0 | 0 | 0 | 0 | 0 | -1 | -2 | -2 | -3 | -4 | -5 |
| | 14-22 PTS | +8 | +7 | +6 | +5 | +5 | +4 | +3 | +2 | +1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | -1 | -2 | -2 | -3 | |
| | 23-27 PTS | +8 | +7 | +6 | +5 | +5 | +4 | +3 | +2 | +1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | -1 | -2 | -2 | |

10. SECURITY TOTAL-ADD OR SUBTRACT CUSTODY VARIANCE (ABOVE) TO BASE SCORE (SECTION B, 8)

| 11. SCORED SECURITY LEVEL _____ | 12. MANAGEMENT SECURITY LEVEL _____ |
|---|---|

| CUSTODY CLASSIFICATION FORM (BP-338) | |
|---|---|
| CUSTODY CLASSIFICATION - PAGE 2 | |
| 13. CUSTODY CHANGE CONSIDERATION<br>A. IF CUSTODY VARIANCE SCORE (SECTION C,ITEM 9)IS IN THE (+) RANGE, CONSIDER A CUSTODY INCREASE<br>B. IF CUSTODY VARIANCE SCORE (SECTION C,ITEM 9)IS IN THE (-) RANGE, CONSIDER A CUSTODY DECREASE C. IF CUSTODY VARIANCE SCORE (SECTION C,ITEM 9)IS ZERO, THE PRESENT CUSTODY SHOULD CONTINUE | |
| **SECTION D:  INSTITUTION ACTION** | |
| 1.  TYPE OF REVIEW :     (EXCEPTION OR REGULAR) | |
| 2.  CURRENT CUSTODY:  (MAXIMUM, IN, OUT, COMMUNITY) | |
| 3.  NEW CUSTODY:  (MAXIMUM, IN, OUT, COMMUNITY) | |
| 4.  ACTION:        (APPROVE, DISAPPROVE) | |
| 5.  DATE OF NEXT REVIEW | |
| 6.  CHAIRPERSON'S NAME AND SIGNATURE | |
| 7.  FOR EXCEPTION REVIEW<br>    NAME (WARDEN OR DESIGNEE) AND SIGNATURE | |
| 8.  SUMMARY OF FINAL ACTION:<br><br>SECURITY LEVEL<br><br><br>CUSTODY | |